AMERICAN NATIONAL BANK AND TRUST COMPANY, Plaintiff-Appellant, *v.* MAR-K-Z MOTORS AND LEASING CO., INC, *et al.,* Defendants—(HENRY BUTTEL, Defendant-Appellee.)

(No. 56952;

First District (2nd Division)—May 22, 1973.

Arnstein & Levin, of Chicago, (Harry G. Fins, of counsel,) for appellant.

Donald J. Miller, of Forreston, for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court.

Plaintiff appeals from a dismissal, with prejudice, of a replevin action it prosecuted against defendant Henry Buttel (hereinafter defendant). Plaintiff contends: (1) it was entitled to recover collateral in which it had a security interest; (2) it was error for the court to grant affirmative relief to defendant, absent a counterclaim and prayer therefor; and (3) it was error to award attorney's fees to defendant.

On December 20, 1968, Mar-K-Z Motors and Leasing Co., Inc. (hereinafter Mar-K-Z) purchased a 1969 Buick Electra automobile. Thereafter, the automobile was leased to Donald Wenck for a two-year period. The purchase was financed by Mar-K-Z through plaintiff. A promissory note, pledging the automobile as collateral, was executed by Mar-K-Z and delivered to plaintiff with an assignment of the Wenck lease. Plaintiff caused its security interest in the automobile to be recorded with the Secretary of State of the State of Illinois. Mar-K-Z failed to make its scheduled payments on the note after March, 1970.

Defendant testified that he purchased the said 1969 Buick automobile in the latter part of March, 1970. He traded in his 1966 Buick automobile and financed the balance of the purchase price with the Pearl City Bank. He did not receive a bill of sale or a certificate of title for the 1969 Buick. He did receive a receipt for $4.00, dated March 20, 1970, bearing the notation "License and Title Transfer—'66 to '69 Buick." He further testified that he had purchased approximately 10 automobiles from Mar-K-Z between the years 1940 and 1970.

Paul Storey, a used car dealer, testified that he purchased defendant's 1966 Buick automobile from Mar-K-Z and had purchased several other used automobiles from Mar-K-Z previously.

Richard Sauer, a salesman employed by Mar-K-Z, testified that, while the primary business of Mar-K-Z was the leasing of automobiles, it was also engaged in the business of selling used "cars that were turned off a lease."

The articles of incorporation of Mar-K-Z and the articles of amendment thereto were admitted in evidence as defendant's exhibit 2. These documents recite that the purpose or purposes for which Mar-K-Z is organized are "[t]o own, purchase or otherwise acquire and sell, lease, rent or otherwise dispose of and deal in motor vehicles * * * and to do all other things necessary for the attainment of such ends."

Plaintiff initially contends that it was entitled to recover the 1969 Buick automobile, and it was, therefore, error for the trial court to dismiss, with prejudice, the action of replevin. Plaintiff argues that it had a perfected security interest in the collateral which entitled it to possession thereof when Mar-K-Z defaulted on its obligation to plaintiff. Defendant argues that the trial court correctly decided that he was a buyer in the ordinary course of business and, therefore, took free of any security interest created by his seller.

■■ A buyer in the ordinary course of business is defined in Ill. Rev. Stat. 1969, ch. 26, par. 1—201(9) as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. 'Buying' may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt."

Ill. Rev. Stat. ch. 26, par. 9—307, entitled "Protection of Buyers of Goods" provides in pertinent part:

"(1) A buyer in ordinary course of business (subsection (9) of Section 1—201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

■■ Plaintiff contends that the trial court erred in deciding that defendant was a buyer in the ordinary course of business. It is urged that Mar-K-Z was not in the business of selling automobiles but rather of leasing them. Defendant's uncontradicted testimony was that he had purchased approximately 10 automobiles from Mar-K-Z over a period of years. Paul Storey testified that he had purchased several automobiles from Mar-K-Z. Richard Sauer testified that Mar-K-Z sold automobiles

after they had been leased. The articles of incorporation of Mar-K-Z state that one of the purposes for which it was organized is to sell automobiles. Thus, there is ample evidence to support the finding that Mar-K-Z was in the business of selling used automobiles. Plaintiff does not dispute that defendant acted in good faith and without knowledge of its security interest. Therefore, there was sufficient evidence to support the finding that defendant was a buyer in the ordinary course of business who is entitled to take the automobile free of the security interest in plaintiff.

Plaintiff next contends that it was error for the trial court to grant affirmative relief to defendant, absent a counterclaim and prayer therefor. The order entered by the trial court provides:

"This cause coming on to be heard and the Court and parties being present in open Court and the Court having heard the evidence, reviewed the exhibits and heard the arguments of counsel, it is hereby ordered that the replevin action as against HENRY BUTTEL is dismissed with prejudice; it is hereby ordered that HENRY BUTTEL is entitled to the ownership, possession and certificate of title to a 1969 Buick Electra No. 484399H180562 and the American National Bank and Trust Company is hereby directed to immediately assign said certificate of title to Henry Buttel free of all liens and encumbrances; it is further ordered that the American National Bank and Trust Company pay to Donald J. Miller the sum of Five Hundred Dollars ($500.00) as attorney's fees. The Court finds there is no just reason for delaying enforcement or appeal from this order."

In Count II of his answer defendant alleged that he was the owner of the property described in the complaint, that plaintiff wrongfully caused that property to be taken from him and that such taking caused him damage in the amount of $1500 because he was deprived of the use thereof. He then demanded the return of the property, damages, and costs of litigation.

■■ Defendant did not designate Count II of his answer as a counterclaim. However, the Illinois Civil Practice Act provides that "[p]leadings shall be liberally construed with a view to doing substantial justice between the parties." (Ill. Rev. Stat. 1969, ch. 110, par. 33(3).) Inasmuch as Count II contains the necessary elements of a counterclaim except a designation as such, we deem it proper to consider it as a counterclaim.

■■ Defendant did not demand assignment of the certificate of title to him in his prayer for relief. However, the Illinois Civil Practice Act also provides that "* * * the prayer for relief does not limit the relief obtainable, but where other relief is sought the court shall, by proper

orders, and upon terms that may be just, protect the adverse party against prejudice by reason of surprise." (Ill. Rev. Stat. 1969, ch. 110, par. 34.) The trial court found that defendant was entitled to possession of the automobile because he was the owner thereof. Defendant alleged that he was the owner of the property in the answer he filed. We are unable to perceive how plaintiff is prejudiced by reason of surprise by the order requiring it to assign the certificate of title to defendant. No useful purpose would be served by requiring defendant to institute further proceedings to acquire the certificate of title, which is of no apparent value to plaintiff in view of the court's determination. Therefore, it was not error for the court to order plaintiff to assign the certificate of title to defendant.

■■ Plaintiff finally contends that it was error for the court to award attorney's fees to defendant. It is argued that attorney's fees are not allowable to a successful litigant absent a statutory provision therefor. Defendant concedes the correctness of this proposition and agrees that the replevin statute does not provide for the allowance of attorney's fees to the successful party, but he argues that he is nonetheless entitled to recover attorney's fees because plaintiff agreed to pay them. Defendant's argument is based upon the following colloquy between the court and plaintiff's counsel:

"The Court: * * * You agree he is entitled to attorney's fees?

Mr. Arnstein: I agree he is entitled to attorney's fees.

The Court: All right. You are obliged to pay $500 in damages."

It is elementary law that an agreement must be supported by a valuable consideration before it is binding upon the parties. The record in the instant case discloses no evidence of consideration supporting the alleged agreement. Absent consideration, the bare statement by plaintiff's counsel that he agreed defendant was entitled to attorney's fees can have no binding effect on plaintiff. Therefore, it was error to award attorney's fees to defendant.

Accordingly, the order of the trial court is affirmed except as to the award of attorneys' fees which is reversed.

Affirmed in part, reversed in part.

LEIGHTON and HAYES, JJ., concur.