THE CAPITAL DEVELOPMENT BOARD *ex rel.* P. J. GALLAS ELEC-
TRICAL CONTRACTORS, INC., Plaintiff-Appellee, v. G. A. RAFEL &
COMPANY, INC., *et al.*, Defendants (Fidelity Deposit Company of Maryland,
Defendant-Appellant).—P. J. GALLAS ELECTRICAL CONTRACTORS,
INC., Plaintiff, v. GEORGE A. RAFEL *et al.*, Defendants.

Second District   No. 85—0059

Opinion filed April 10, 1986.—Rehearing denied June 13, 1986.

Edward P. McNeela and Cornelius Francis Riordan, both of McNeela & Griffin, Ltd., of Chicago, for appellants.

Richard J. Puchalski and Joseph D. Keenan, both of Doss, Puchalski, Keenan & Bargiel, Ltd., of Chicago, for appellee.

JUSTICE SCHNAKE delivered the opinion of the court:

This is a consolidated action by an electrical contractor, P. J. Gallas Electrical Contractors, Inc. (plaintiff), against a second electrical contractor, George A. Rafel, individually, and G. A. Rafel & Company, Inc. (Rafel), and its surety, Fidelity Deposit Company of Maryland (defendant), for breach of contract. After a jury trial in the circuit court of Du Page County, a judgment in the amount of $46,634.91 was entered against Rafel and defendant. Thereafter, defendant filed this appeal, arguing: (1) that the trial court erred in denying its motion for judgment on the pleadings; (2) that the jury's verdict was against the manifest weight of the evidence; and (3) that the trial court erred in awarding plaintiff attorney fees and prejudgment interest.

On June 8, 1973, Rafel was awarded a contract by the Illinois Capital Development Board (CDB) for the electrical work at a project known as the Davea Center, located in Addison. As per the contract requirements, Rafel obtained a labor and material payment bond from defendant. In late 1973 or early 1974, Rafel experienced financial dif-

ficulties and filed a petition for reorganization pursuant to chapter 11 of the Bankruptcy Act. Rafel was unable to complete the Davea Center on its own and turned to plaintiff for assistance. Plaintiff and Rafel entered into an oral agreement whereby plaintiff would complete the physical construction work and Rafel would continue to handle the paper work. Plaintiff and Rafel worked under this arrangement until the Davea Center was finished.

After receiving the necessary documents, including a final lien waiver from plaintiff, the CDB processed the final payment and issued a warrant for $46,634.91 to Rafel. George Rafel then met with Peter Gallas to discuss final payout. Rafel told Gallas that his company was entitled to the retainage it had in the job, which was approximately $22,000, and to a rental fee for his tools and equipment that plaintiff had been using to complete the project. Gallas disagreed that Rafel was entitled to any of the final payment or to any rental fee.

On November 15, 1978, plaintiff filed suit against Rafel and defendant on the labor and material bond. On December 18, 1978, plaintiff filed suit against George Rafel, individually, and against G. A. Rafel & Company, for breach of the oral agreement to complete the Davea Center electrical work. On June 6, 1979, plaintiff filed its amended complaint which consolidated the prior two complaints. In its answer filed on June 15, 1979, defendant alleged that plaintiff was not a proper party to sue on the bond. In its amendment to answer filed August 30, 1979, defendant alleged the additional affirmative defenses of waiver and the statute of limitations. These three defenses were not specifically designated as affirmative defenses, and plaintiff did not file a reply to them.

On July 19, 1979, and July 21, 1980, respectively, plaintiff and defendant moved for summary judgment. The court denied both motions on October 31, 1980, but did not address the issue of whether plaintiff's lien waiver barred it from suing defendant on its labor and material payment bond. Defendant thereafter filed a motion to reconsider as to this issue. Plaintiff responded that summary judgment should be denied because of the existence of an industry custom that final lien waivers were routinely tendered by subcontractors before they received payment. The court denied defendant's motion to reconsider on May 20, 1983, and the case proceeded to trial on January 17, 1984.

At the conclusion of the trial, the jury returned a verdict in favor of plaintiff for $46,634.91. Judgment was entered for said amount on January 23, 1984. On February 2, 1984, plaintiff filed a petition for

interest, costs and attorney fees. On July 20, 1984, the court granted plaintiff's motion and awarded $13,018.77 in prejudgment interest and $30,547.50 in attorney fees. After several extensions the court set November 21, 1985, as the last date for filing of post-trial motions. Defendant filed its post-trial motion on that date. Defendant's motion was denied on December 20, 1984. On December 28, 1984, the court granted plaintiff additional attorney fees in the amount of $3,469.25 for responding to defendant's post-trial motion. Defendant filed its notice of appeal on January 18, 1985. Rafel has not appealed.

I

The first issue raised is whether the trial court erred in denying defendant's motion for judgment on the pleadings and in allowing plaintiff to file its reply at the conclusion of the trial. Defendant contends that its affirmative defense of waiver contained in its amendment to answer stood admitted because plaintiff had failed to file a reply prior to trial.

■ Under *Chicago Bridge & Iron Co. v. Reliance Insurance Co.* (1970) 46 Ill. 2d 522, a subcontractor who delivers its final mechanic's lien waiver prior to payment also waives its rights against the surety under its payment bond unless the subcontractor proves there was a custom in the industry for subcontractors to tender waivers prior to payment. Therefore, where the surety properly raises the subcontractor's lien waiver as an affirmative defense, the subcontractor must raise the issue of industry custom in a reply to rebut the defendant's waiver defense. In the present case, plaintiff did not file a reply before trial an argues that it was not required to because defendant failed to designate its waiver defense as an affirmative defense.

■ Plaintiff is correct that defendant's amendment to answer was not technically correct. Under sections 2—603(b) and 2—613(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, pars. 2—603(b), 2—613(a), formerly Ill. Rev. Stat. 1979, ch. 110, pars. 33(2), 43(1)), defendant's affirmative defenses should have been designated as such. Despite this technical defect, however, defendant's amendment to answer was sufficient to raise the affirmative defense of waiver. (*Cf. American National Bank & Trust Co. v. Mar-K-Z Motors & Leasing Co.* (1973), 11 Ill. App. 3d 1046, *aff'd* (1974), 57 Ill. 2d 29 (count II of answer containing the necessary elements of a counterclaim except a designation as such, properly considered as a counterclaim).) Plaintiff, therefore, should have filed a reply to defendant's answer to raise his rebuttal issue of industry custom. Ill. Rev. Stat. 1983, ch. 110, pars. 2—602, 2—613(d), formerly Ill. Rev. Stat. 1979,

ch. 110, pars. 32, 43(4).

■ While plaintiff should have filed a reply prior to trial, we cannot say that the trial court erred in denying defendant's motion for judgment on the pleadings and allowing plaintiff to file its reply at the conclusion of the trial. Section 2—1007 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1007) provides that "[o]n good cause shown, in the discretion of the court and on just terms, additional time may be granted for the doing of any act or the taking of any step or proceeding prior to judgment." The Code of Civil Procedure itself is to be "liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties." (Ill. Rev. Stat. 1983, ch. 110, par. 1—106.) We find that the circumstances of this case satisfy the "good cause" requirement of section 2—1007.

A motion for judgment on the pleadings tests the sufficiency of the pleadings themselves and, therefore, is normally presented prior to discovery. Here, it was not until the parties were at trial that defendant, without notice, moved for judgment on the pleadings. Plaintiff apparently believed that it did not have to file a reply because defendant had not properly pleaded his affirmative defense of waiver. Defendant's failure to move promptly for judgment on the pleadings, following the lapse of time allowed for filing of a reply, did nothing to dispel this misconception. Defendant was well aware that industry custom would be a critical issue at trial because plaintiff had raised the issue to defeat defendant's motion for summary judgment. Under these circumstances, it was not an abuse of discretion for the court to allow plaintiff to file a reply at the close of the evidence. *Grossman Clothing Co. v. Gordon* (1982), 110 Ill. App. 3d 1063; *Krych v. Birnbaum* (1978), 66 Ill. App. 3d 469.

## II

■ The second issue raised is whether the jury's verdict was against the manifest weight of the evidence. At trial the jury was faced with three factual issues relevant to this appeal:

(1) Whether the tendering of a final waiver of lien by a subcontractor prior to receiving payment is customary in the construction industry so as not to bar plaintiff from recovering against defendant on the bond.

(2) Whether plaintiff performed work for Rafel as a subcontractor or as a joint venturer.

(3) Whether plaintiff filed its cause of action within six months after acceptance of the building project or work.

In reaching its verdict in this case, the jury necessarily found in favor of the plaintiff on each of these factual issues. Defendant argues that each of these findings was against the manifest weight of the evidence.

As to the first jury issue, plaintiff presented the testimony of five witnesses who were contractors in the construction industry. Each witness testified that it was the custom in the industry for a subcontractor to deliver a final lien waiver before being paid. The witnesses based their opinions on the conduct of their own companies. other companies where they had worked, and their general knowledge of how the industry and their competitors operated.

Specifically, Albert J. Pavlick, president of Hyre Electric Company, testified that in his 35 years in the industry he gave a final lien waiver before payment 98% of the time. James Stella, president of Corporate Steel Erection Company, testified that in his 13 years in the industry he received payment before delivering a waiver in only 10% of the jobs and that was when the amount due was small and the general contractor had the money. Charles Anderson, co-owner of Amber Electric, testified that in his 25 years in the industry he had never been paid before giving a lien waiver. Gunther Hiergeist, vice-president of Degraff Brothers Incorporated, and Peter Gallas also testified as to the custom in the industry. While defendant presented evidence to the contrary, we cannot say the jury's finding of an industry custom was against the manifest weight of the evidence.

■ Defendant's argument that the evidence was insufficient because it did not show that the custom was followed in every case by every general contractor misconstrues the requirements for an industry custom. To be binding, an industry custom must be so well known, uniform, long established and *generally acquiesced in* as to induce a belief that the parties contracted with reference to it, nothing appearing in their contract to the contrary. (*Metro-Goldwyn-Mayer, Inc. v. ABC-Great States, Inc.* (1972), 8 Ill. App. 3d 836, 838; *Katz v. Brooks* (1965), 65 Ill. App. 2d 155, 160.) Plaintiff did not have to show that the custom was followed on every job by every contractor. Further, defendant's argument that none of the witnesses testified as to how long the custom had been followed is not supported by the record. Plaintiff's witnesses stated their opinion as to the industry custom based on their experience in the industry, which ranged from 13 to 35 years. From this the jury could infer that the custom was sufficiently long established as to induce a belief that the parties contracted with reference to it in 1973.

Defendant argues in the alternative that even if the evidence did

prove a custom in the industry, the custom shown was that subcontractors knowingly released their bond rights and relied exclusively on the general contractor's promise to pay them when they tendered their lien waivers. Our review of the record, however, shows that while the witnesses testified that they rely on the general contractor's promise to pay them, they also testified that they have no choice but to tender their final lien waivers or they would not be paid. None of plaintiff's witnesses testified that they were relying "exclusively" on the general contractor for payment or that they were giving up any payment bond rights against the surety.

■ Defendant also briefly argues that the trial court erred in refusing to give three of its proposed jury instructions. Plaintiff's instruction No. 25 stating the elements of a custom in the industry stated in part:

"(3) The parties knew or should have known of the custom at the time the contract was made."

Defendant's instruction No. 3 stated in part:

"(3) The custom was contemplated by the parties to be part of the contract at the time the contract was made."

A party to a contract may be charged with knowledge of any custom of which it is or should be aware. (*Gord Industrial Plastics, Inc. v. Aubrey Manufacturing, Inc.* (1984), 127 Ill. App. 3d 589; *Fifteenth Avenue Christian Church v. Moline Heating & Construction Co.* (1970), 131 Ill. App. 2d 766.) The court, therefore, correctly denied defendant's instruction No. 3. Further, we find no error in the court's denial of defendant's other proposed jury instructions on custom in the industry.

As to the second jury issue, it is undisputed that plaintiff and Rafel made an oral agreement concerning the electrical construction work on the project after Rafel filed for bankruptcy. Under this agreement plaintiff assumed the remaining physical work on the project while Rafel continued to handle the paper work. The question for the jury was whether plaintiff was acting as a subcontractor or a joint venturer.

■ Peter Gallas testified that under the oral agreement plaintiff was hired as a subcontractor to complete Rafel's electrical construction work. Gallas' testimony was supported by Rafel's letter to Conroy at the CDB which stated:

"In order to meet our contractual obligations it is now necessary to secure a qualified electrical subcontractor to assume such obligations under our direction.

The subcontractor selected to continue the electrical work at

the Davea Center is: P. J. Gallas Electrical Contractors, Inc., 651 Checker Drive, Buffalo Grove, Illinois 60090."

The evidence also showed that plaintiff filled out pay-request forms showing the amount of work it completed and gave the forms to Rafel, who signed them as the prime contractor. CDB then made payment to Rafel, who in turn paid plaintiff. Further, Charles Anderson, who had testified on the custom in the industry, also testified that he doubted if any contractor would form a joint venture to complete a project with a second contractor who was in chapter 11 bankruptcy because of the risks involved in joining such a venture. After reviewing the record, we cannot say that the jury's verdict was against the manifest weight of the evidence as to this issue.

■■ The third jury issue was whether plaintiff had filed this action within the applicable limitations period. Section 2 of "An Act in relation to bonds of contractors entering into contracts for public construction," states in part:

> "nor shall any action of any kind be brought later than six (6) months after acceptance by the State *** of the building project or work." (Ill. Rev. Stat. 1977, ch. 29, par. 16.)

Here a certificate of final acceptance was issued by the CDB. The date of issuance stated on the certificate was August 8, 1977. Frank Conroy, however, testified that he did not sign the certificate until sometime after May 18, 1978, when he first received it. This action was filed on November 15, 1978.

Conroy was the project manager and contract administrator for the Davea Center project. As such, Conroy was responsible for processing payouts and administering the contract funds. His signature on behalf of the CDB, therefore, was necessary to effect the final acceptance of the project. If the jury accepted Conroy's testimony, it could properly find that this action was filed within six months of final acceptance. We cannot say, therefore, that the jury's finding was against the manifest weight of the evidence.

### III

The third issue raised is whether the trial court erred in awarding plaintiff prejudgment interest and attorney fees. The court awarded plaintiff prejudgment interest under section 2 of "An Act in relation to the rate of interest ***" (Ill. Rev. Stat. 1983, ch. 17, par. 6402), which provides for the payment to creditors of interest at the rate of 5% per annum on "all moneys after they become due on any bond, bill, promissory note, or other instrument of writing." Defendant argues that prejudgment interest was improper because the amount of

damages was not liquidated.

■■ ■ Contrary to defendant's position, however, where an action is on a bond, it does not have to appear that the amount due is liquidated. It is sufficient that the action is based upon a bond and that the money was due. (*Fisher v. Fidelity & Deposit Co.* (1984), 125 Ill. App. 3d 632; *County of Will v. Woodhill Enterprises, Inc.* (1971), 4 Ill. App. 3d 68.) Defendant's reliance on *Reserve Insurance Co. v. General Insurance Co. of America* (1979), 77 Ill. App. 3d 272, is misplaced. In *Reserve*, the court denied prejudgment interest on a fidelity bond because of the absence of a specified due date for payment on the bond. A specific due date is inherent in a construction payment bond, and interest is properly allowed from the date that the action is commenced. *Griffin Wellpoint Corp. v. Engelhardt, Inc.* (1980), 92 Ill. App. 3d 252.

■■ The trial court also awarded plaintiff attorney fees. The well-established rule in this State is that attorney fees are recoverable if specifically authorized by contract. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154.) The court found that attorney fees were authorized by paragraph 7.5.4, which states:

> "The Contractor or his bondsmen shall pay all lien or court costs and attorney's fee any creditor may incur in the forced collection of any just claim, and interest from date of filing lien until payment is made."

This paragraph was originally drafted as part of the prime contract between Rafel and the CDB and was incorporated by reference into defendant's payment bond.

Defendant argues that since its bond covers only labor and material, and its liability does not extend beyond the specific terms of its bond, it cannot be held liable for attorney fees. We disagree. When a bond incorporates by reference the construction contract, the provisions of the construction contract are provisions of the bond. (*Fisher v. Fidelity & Deposit Co.* (1984), 125 Ill. App. 3d 632, 639; *Lake View Trust & Savings Bank v. Filmore Construction Co.* (1979), 74 Ill. App. 3d 755, 757.) Therefore, paragraph 7.5.4 was a specific term of defendant's bond.

While we find paragraph 7.5.4 was a term of defendant's bond, we do not therefore conclude that it justifies an award of attorney fees in this case. Paragraph 7.5.4 states that the contractor or his bondsman shall pay the attorney fee any creditor may incur in the forced collection of "any just claim." This paragraph is ambiguous in that it is unclear from the language whether it applies to any just claim against the CDB, or whether it applies to any just claim against

any party involved in the Davea Center project, including the contractor, its bondsman or a subcontractor.

A contract should be construed to give effect to the intentions of the parties, and great weight should be given to the principal apparent purpose and intention of the parties when they entered into the contract. (*De Witt County Public Building Com. v. County of De Witt* (1984), 128 Ill. App. 3d 11, 18.) While incorporated into the payment bond, this paragraph was originally drafted as part of the prime contract between the general contractor Rafel and the CDB. Interpreted in this context, the paragraph was apparently for the protection of the CDB and applied to any just claim brought against the CDB by any of its creditors. Paragraph 7.5.4, therefore, does not allow recovery of attorney fees in an action against the bondsman.

For the reasons stated herein, the judgment of the circuit court of Du Page County is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

STROUSE and REINHARD, JJ., concur.