# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Kilburg v. Mohiuddin*, 2013 IL App (1st) 113408

---

| | |
|---|---|
| Appellate Court Caption | JOYCE KILBURG, Plaintiff-Appellant, v. MUNAWAR MOHIUDDIN, ZANTE CAB COMPANY, INC., a Corporation, TAXI MEDALLION MANAGEMENT, INC., TAXI AFFILIATION SERVICES, LLC, and WOLLEY CAB ASSOCIATION, INC., d/b/a Checker Taxi Affiliation, Inc., Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-3408 |
| Filed | May 3, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries plaintiff suffered when the taxi in which she was riding left the road and struck a tree, the dismissal of plaintiff's spoliation of evidence claims against the owner and driver of the cab was reversed, since the owner and driver were aware of plaintiff's request for the preservation of the cab, including the event data recorder, and the complaint sufficiently alleged facts establishing a duty on the part of the owner and the driver to preserve the cab and its contents, but the spoliation claims were properly dismissed as to the defendant entities involved in licensing and operating the cab in the absence of a showing that those entities knew of plaintiff's request to preserve the cab. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-12140; the Hon. Lynn M. Egan, Judge, presiding. |
| Judgment | Reversed in part and affirmed in part. |

| Counsel on Appeal | Corboy & Demetrio, P.C., of Chicago (Daniel M. Kotin and William T. Gibbs, of counsel), for appellant. |
|---|---|
| | Allen L. Wiederer, of Chicago, for appellees Munawar Mohiuddin and Zante Cab Company, Inc. |
| | Hinshaw & Culbertson LLP, of Chicago (Steven R. Bonanno, Kimberly A. Jansen, and Anne C. Couyoumjian, of counsel), for appellees Taxi Medallion Management, Inc., Taxi Affiliation Services, LLC, and Wolley Cab Association, Inc. |
| Panel | JUSTICE PALMER delivered the judgment of the court, with opinion. Presiding Justice McBride and Justice Taylor concurred in the judgment and opinion. |

## OPINION

¶ 1   Plaintiff Joyce Kilburg was injured while a passenger in a taxi. She filed a negligence and spoliation of evidence action against defendants Munawar Mohiuddin, Zante Cab Co., Inc. (Zante), Taxi Medallion Management, Inc. (Taxi Medallion), Taxi Affiliation Services, LLC (Taxi Affiliation), and Wolley Cab Association, Inc. (Wolley), doing business as Checker Taxi Affiliation, Inc. The trial court dismissed the spoliation claims against defendants pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)). Plaintiff appeals, arguing the court erred in dismissing her spoliation claims because her complaint set forth sufficient facts to show that defendants had a duty to preserve the evidence. We affirm in part and reverse in part.

¶ 2                              Background

¶ 3   On October 6, 2009, at 10:30 p.m., plaintiff was injured when the taxi in which she was a passenger left the roadway and crashed into a tree. Mohiuddin was the driver of the taxi. Zante owned the taxi. After the accident, the Chicago police department towed the taxi to a Chicago auto pound. On October 8, 2009, Zante had the taxi towed to a lot at 949 Elston Avenue in Chicago. Taxi Medallion leased the lot from the lot's owner and stored taxis there. Taxi Affiliation paid the rent on the lot.

¶ 4   The taxi bore the insignia of Checker Taxi. Wolley, a taxi association, operated the Checker taxis in the City of Chicago. Zante had a written "Association Agreement" with Wolley "d/b/a Checker Taxi Affiliation, Inc." Under the agreement, Zante, identified as an independent contractor, paid Wolley a weekly "association fee" in exchange for a license to

operate the taxi as a Checker taxi, radio dispatch services, insurance coverage for the taxi and assorted other services. The agreement provided that Wolley could terminate the agreement if Zante or its driver failed to notify Wolley "of any accident involving [Zante] and one of its taxicabs within one (1) hour following the occurrence of such accident."

¶ 5      On October 13, 2009, plaintiff filed a complaint against Mohiuddin, Zante and Checker Taxi Company, Inc., asserting that their negligence caused her injuries. Checker Taxi Company, Inc., ceased to exist in 1988. On October 15, 2009, the court granted plaintiff's emergency motion for an order of protection and production, ordering that Mohiuddin, Zante and Checker Taxi Company, Inc., "shall preserve and protect the [taxi] in its current condition and shall make it available to Plaintiff and her representatives ***. The vehicle shall not be driven, repaired, modified or moved without agreement of the plaintiff or prior order of Court."

¶ 6      Plaintiff amended her complaint numerous times, adding and dismissing parties and claims. On July 12, 2011, she filed the five-count, sixth amended complaint at issue here. Count I asserted a negligence claim against Mohiuddin and Zante. Counts II through V asserted claims for spoliation of evidence against Mohiuddin and Zante, Wolley, Taxi Medallion, and Taxi Affiliation. Only the four spoliation claims are at issue here.

¶ 7      In plaintiff's spoliation claim against Mohiuddin and Zante (count II), she asserted that Zante knew or should have known that Mohiuddin, Zante's agent and/or employee, had suggested that the cause of the crash was "sudden acceleration (*i.e.*, the taxicab suddenly, unexpectedly and unintentionally accelerated)."[1] She asserted that, on October 6, 2009, the day of the crash, the taxi was equipped with an event data recorder with two component parts and that, "through October 8, 2009, both component parts of the Event Data Recorder were present." Plaintiff asserted that, on October 8, 2009, Zante and Mohiuddin possessed, controlled and had access to the taxi.

¶ 8      Plaintiff asserted that on October 9, 2009, her counsel had sent correspondence to Mohiuddin and Zante demanding that the taxi be preserved and protected.[2] She asserted that, on November 9, 2009, her counsel and consultants inspected the taxi in order to verify the claim of sudden acceleration by downloading the event data recorder information but they found the recorder missing. Plaintiff claimed that, if her counsel and consultants had been able to download the data and verify that the taxi experienced sudden acceleration, she "would have commenced with a product liability lawsuit."

¶ 9      Plaintiff asserted that Mohiuddin and Zante knew or should have known that the recorder was material evidence in the litigation regarding the taxi crash on the basis of (1) the October

---

[1]In his answers to plaintiff's interrogatories, Mohiuddin had reported that the taxi "unexpectedly and uncontrollably accelerated." Zante had answered similarly, stating that "[i]t is thought that the vehicle experienced a sudden, unexpected and uncontrollable acceleration which led to the accident. The precise defect or cause of such phenomenon is unknown."

[2]Plaintiff did not attach a copy of this correspondence to her complaint.

9, 2009, correspondence from her counsel, (2) her October 13, 2009, complaint and (3) the court's October 15, 2009, order requiring preservation of the taxi. She asserted that Zante and Mohiuddin removed or allowed removal of the recorder between October 6, 2009, and November 9, 2009.[3] She claimed that, "[a]s a proximate result of [their] destruction, misplacement and/or loss of critical evidence, [she could not] succeed in proving a product liability lawsuit regarding sudden acceleration." Plaintiff asserted that, "[h]ad it not been for the destruction, misplacement and/or loss of the critical component of the Event Data Recorder, Plaintiff would have had a reasonable probability of succeeding in proving a product liability claim as Plaintiff's counsel's consultants could have verified that the taxicab experienced 'sudden acceleration' as a result of the defect."

¶ 10    In plaintiff's spoliation claim against Wolley (count III), she asserted that Zante operated the taxi as part of a "Wolley/Checker fleet of taxicabs," Mohiuddin was an agent and/or employee of Wolley/Checker and Wolley controlled the taxi. She asserted that, pursuant to Zante's agreement with Wolley, Zante notified Wolley of the accident and plaintiff's injuries on October 6, 2009, within an hour of the crash. Plaintiff alleged that Wolley knew of Mohiuddin's sudden acceleration assertion on or after October 6, 2009. She claimed that, on October 6, 2009, the taxi was equipped with an event data recorder with two component parts and "through October 8, 2009, both component parts of the Event Data Recorder were present."

¶ 11    Plaintiff asserted the taxi was relocated to the Elston lot on October 8, 2009, and that Wolley possessed, controlled and had access to the taxi on that date. Plaintiff alleged that Wolley knew or should have known that the event data recorder was material evidence in litigation regarding the crash through her counsel's correspondence, her initial complaint and the court's order of protection. She alleged that, between October 6, 2009, and November 9, 2009, Wolley removed or allowed the removal of the recorder.[4] Plaintiff claimed that, as a result of Wolley's "destruction, misplacement and/or loss of the critical component" of the recorder, her reasonable probability of succeeding in proving a product liability claim was foreclosed.

¶ 12    In plaintiff's spoliation claims against Taxi Medallion in count IV and Taxi Association in count V, she asserted that Taxi Medallion leased the Elston lot on which the taxi was stored. She claimed that, pursuant to Taxi Medallion's lease agreement with the lot's owner, it was permitted to park vehicles in the lot and "was obligated to prevent 'anything to be done upon the property which in any way shall violate any federal, state or municipal law, ordinance or regulation.' " Plaintiff claimed that Taxi Affiliation, "an affiliated corporation

---

[3]This allegation in the complaint contradicts plaintiff's earlier allegations against Mohiuddin and Zante that the taxi was equipped with an event data recorder with two component parts on October 6, 2009, the day of the crash, and "through October 8, 2009, both component parts of the Event Data Recorder were present."

[4]Again, this allegation contradicts plaintiff's earlier allegations against Wolley that the taxi was equipped with an event data recorder with two component parts on October 6, 2009, and "through October 8, 2009, both component parts of the Event Data Recorder were present."

of [Zante, Wolley and Taxi Medallion,] paid the rental fee to allow Taxi Medallion to use the lot.

¶ 13    The majority of plaintiff's assertions regarding Taxi Medallion and Taxi Affiliation were identical. In count IV, she asserted that Taxi Medallion "managed" the "Wolley/Checker fleet of taxicabs" and Zante notified Taxi Medallion and Wolley/Checker of the crash and injuries within the hour. In count V, she made the same assertions against Taxi Affiliation. In count IV, plaintiff asserted that Taxi Medallion controlled the lot, determined which vehicles in its fleet would be stored there and was obligated to ensure that the stored vehicles were safe from theft, tampering and destruction. She claimed that the taxi had both components of the event data recorder on October 6, 2009, and "at the time [it] was moved" to the Elston lot. She claimed that, "on October 8, 2009, and thereafter," the taxi was stored on the Elston lot and in the exclusive possession and control of Taxi Medallion. In count V, she made the same assertions regarding Taxi Affiliation.

¶ 14    In count IV, plaintiff asserted that Taxi Medallion knew of the sudden acceleration claim and that the data recorder was critical evidence. She asserted that, due to its corporate relationship with Zante and Wolley and its agreement to store the taxi, Taxi Medallion knew of the October 9 letter, October 13 complaint and October 15 court order "as it had voluntarily undertaken possession, control and responsibility for the subject taxicab and component parts, including the [data recorder] and its component parts." She asserted, "[a]lternatively, [Taxi Medallion] failed to enact a policy or procedure for identifying which vehicles at its storage lot were subject to Protective Orders and/or requests for preservation of evidence." She alleged that, between October 8, 2009, and November 9, 2009, Taxi Medallion removed or allowed the removal of a critical component of the data recorder and, as a proximate result, she could not succeed in her product liability lawsuit based on the taxi's "sudden acceleration." In count V, plaintiff made the same allegations regarding Taxi Affiliation.

¶ 15    Plaintiff attached to her complaint a copy of the association agreement between Zante and Wolley, a copy of the "early entry license agreement" between Taxi Medallion and the owner of the Elston lot allowing Taxi Medallion to occupy the lot and a copy of two checks from Taxi Affiliation to the lot's owner showing that Taxi Affiliation paid the rent on the lot.

¶ 16    Mohiuddin and Zante moved to dismiss the count II spoliation claim against them pursuant to section 2-615. They asserted plaintiff failed to allege facts giving rise to a duty on behalf of Zante and Mohiuddin to preserve the evidence in question, the taxi. Taxi Medallion, Taxi Affiliation and Wolley moved similarly, asserting that counts III, IV and V failed to state facts sufficient to show that they had a duty to preserve the taxi.

¶ 17    On November 1, 2011, the court granted defendants' motions to dismiss the spoliation claims with prejudice. Pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), it found no just reason to delay the enforcement or appeal of the dismissal order. On November 15, 2011, plaintiff filed her timely notice of appeal from the court's dismissal of her four spoliation counts.

¶ 18                                    Analysis

¶ 19      Plaintiff argues that the trial court erred in dismissing the spoliation of evidence claims in her sixth amended complaint pursuant to section 2-615 because her complaint set forth sufficient facts to support spoliation claims against each of the defendants. A section 2-615 motion to dismiss is based on the pleadings rather than on the underlying facts, admits all well-pleaded facts on the face of the complaint and attacks the legal sufficiency of the complaint, alleging only defects on the face of the complaint. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 584 (2000); *Elson v. State Farm Fire & Casualty Co.*, 295 Ill. App. 3d 1, 6 (1998). Viewing the complaint in the light most favorable to plaintiff, we must determine whether the complaint alleges facts sufficient to state a cause of action upon which relief may be granted (*Ziemba v. Mierzwa*, 142 Ill. 2d 42, 46-47 (1991)) and do not consider the merits of the case (*Elson*, 295 Ill. App. 3d at 5).

¶ 20      In making this determination, we must take as true all well-pleaded facts of the complaint, drawing all reasonable inferences therefrom in favor of the nonmoving party and disregarding mere conclusions of law unsupported by specific factual allegations. *Krueger v. Lewis*, 342 Ill. App. 3d 467, 470 (2003); *Ziemba*, 142 Ill. 2d at 47. In ruling on a section 2-615 motion, the court "may not consider affidavits, the products of discovery, documentary evidence not incorporated into the pleadings as exhibits, testimonial evidence or other evidentiary materials." *Elson*, 295 Ill. App. 3d at 6. We must construe the complaint liberally and dismiss only when it appears that plaintiff cannot recover under any set of facts. *Sheffler v. Commonwealth Edison Co.*, 399 Ill. App. 3d 51, 59 (2010). Our standard of review is *de novo*. *Neppl*, 316 Ill. App. 3d at 583.

¶ 21      In Illinois, spoliation of evidence is a form of negligence. *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 26. In order to set forth a sufficient claim of spoliation of evidence, plaintiff's complaint must allege facts in support of the four elements of a spoliation claim: "(1) the defendant owed the plaintiff a duty to preserve the evidence; (2) the defendant breached that duty by losing or destroying the evidence; (3) the loss or destruction of the evidence was the proximate cause of the plaintiff's inability to prove an underlying lawsuit; and (4) as a result, the plaintiff suffered actual damages." *Martin*, 2012 IL 113270, ¶ 26.

¶ 22      As a general rule in Illinois, there is no duty to preserve evidence. *Martin*, 2012 IL 113270, ¶ 27. However, a plaintiff can establish an exception to the general no-duty rule if it meets the two-prong test set forth by our supreme court in *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188 (1995). *Martin*, 2012 IL 113270, ¶ 27 (citing *Boyd*, 166 Ill. 2d at 195).

          "Under the first, or 'relationship,' prong of the test, a plaintiff must show that an agreement, contract, statute, special circumstance, or voluntary undertaking has given rise to a duty to preserve evidence on the part of the defendant. [Citations.] Under the second, or 'foreseeability,' prong of the *Boyd* test, a plaintiff must show that the duty extends to the specific evidence at issue by demonstrating that 'a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action.' *Boyd*, 166 Ill. 2d at 195. If the plaintiff fails to satisfy both prongs of the *Boyd* test, the defendant has no duty to preserve the evidence at issue." *Martin*, 2012 IL 113270, ¶ 27.

-6-

Turning to the first prong of the *Boyd* test, we must determine whether plaintiff's complaint alleged facts sufficient to support a finding that an agreement, contract, statute, special circumstance or voluntary undertaking gave rise to a duty on the part of Mohiuddin and Zante to preserve the missing evidence, the event data recorder. Plaintiff's complaint stated no allegation that an agreement, contract or statute imposed such a duty and she does not argue otherwise. She points instead to her counsel's sending the October 9, 2009, letter demanding preservation of the taxi; her filing the complaint on October 13, 2009; and the court's ordering the preservation of the evidence on October 15, 2009. Plaintiff argues that, at a minimum, these actions, coupled with defendants' knowledge of these actions and their knowledge of the unique circumstances surrounding the accident, created a special circumstance under which defendants' duty to preserve the evidence arose.

Recently, in *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, our supreme court addressed the existence of duty due to special circumstance in a spoliation of evidence claim. The court stated that "Illinois courts have not precisely defined a 'special circumstance' in the context of recognizing a duty in a spoliation of evidence claim. However, in *Miller v. Gupta*, 174 Ill. 2d 120 (1996), we hinted at what special circumstances might give rise to a duty to preserve evidence." *Martin*, 2012 IL 113270, ¶ 39.

In *Miller*, a plaintiff had brought a malpractice and spoliation of evidence action against her physician where the physician had allowed the plaintiff's X rays to be destroyed. *Martin*, 2012 IL 113270, ¶ 39 (citing *Miller*, 174 Ill. 2d at 122-23). The supreme court affirmed the appellate court's decision to allow the plaintiff to replead her complaint to conform to *Boyd*, which had been filed while the appeal was pending. *Martin*, 2012 IL 113270, ¶ 39 (citing *Miller*, 174 Ill. 2d at 128).

In *Martin*, the court noted that its decision in *Miller*:

"made special mention of evidence in the record that might constitute 'special circumstances' supporting a duty by the defendant upon repleading of the complaint: (1) the plaintiff's medical malpractice attorney requested the plaintiff's X rays from her doctor; (2) in response to the request, the doctor obtained the X rays and placed them on the floor in his office prior to taking them to the hospital for copying; (3) the doctor admitted that his wastebasket was located three feet from where he placed the X rays; (4) a housekeeper who was assigned to clean the doctor's office testified that she regularly disposed of X ray jackets located in or near the trash; and (5) the housekeeper stated her belief that the plaintiff's X rays were thrown out when she cleaned the office and were later destroyed in the hospital's incinerator." *Martin*, 2012 IL 113270, ¶ 40 (citing *Miller*, 174 Ill. 2d at 123-24).

The court then pointed out that "[t]he factors in *Miller* supporting a 'special circumstances' exception to the no-duty rule were notably absent in *Dardeen* [*v. Kuehling*], 213 Ill. 2d 329 [(2004)]." *Martin*, 2012 IL 113270, ¶ 41. In *Dardeen*, the plaintiff was injured when he fell in a hole on a brick sidewalk next to someone's home. *Martin*, 2012 IL 113270, ¶ 41 (citing *Dardeen*, 213 Ill. 2d at 331). The homeowner contacted her insurer that day, reported the accident and asked whether she could remove the bricks in order to prevent

further injuries. The insurer told her yes. The plaintiff returned to the accident site that evening to see the hole but took no photographs of the hole. A few days thereafter, the homeowner removed 25 to 50 bricks from the area. The plaintiff subsequently brought premises liability claims against the homeowner and spoliation of evidence claims against the homeowner and the insurer. *Martin*, 2012 IL 113270, ¶ 41 (citing *Dardeen,* 213 Ill. 2d at 331-32). The supreme court affirmed summary judgment for the insurer, finding that the plaintiff had failed to establish that the insurer owed a duty to preserve the sidewalk. *Martin*, 2012 IL 113270, ¶ 42 (citing *Dardeen*, 213 Ill. 2d at 338-40).

¶ 29 In *Martin*, the court explained that, in *Dardeen*, it had distinguished *Miller*,

"noting several key differences in the facts:

'Unlike the plaintiff in *Miller*, [plaintiff] never contacted the defendant to ask it to preserve evidence. [Plaintiff] never requested evidence from [the insurer], and he never requested that [the insurer] preserve the sidewalk or even document its condition. And though he visited the accident site hours after he was injured, he did not photograph the sidewalk. Additionally, unlike the doctor in *Miller*, [the insurer] never possessed the evidence at issue and, thus, never segregated it for the plaintiff's benefit.' " *Martin*, 2012 IL 113270, ¶ 42 (quoting *Dardeen*, 213 Ill. 2d at 338).

The court stated that, in *Dardeen*:

"We noted that 'no Illinois court has held that a mere opportunity to exercise control over the evidence at issue is sufficient to meet the relationship prong' and that '[t]he record here indicates that [the insured] had neither possession nor control over [defendant's] sidewalk and, therefore, owed [plaintiff] no duty to preserve it.' " *Martin*, 2012 IL 113270, ¶ 44 (quoting *Dardeen*, 213 Ill. 2d at 339).

¶ 30 Our supreme court explained that it

"did not hold in *Dardeen* that a defendant's possession and control of the evidence, standing alone, is sufficient to establish a duty to preserve the evidence. Rather, [it] held that [the insurer's] lack of possession or control over the sidewalk defeated the plaintiff's spoliation claim. It is clear from the context of the *Dardeen* decision that *something more than possession and control are required, such as a request by the plaintiff to preserve the evidence* and/or the defendant's segregation of the evidence for the plaintiff's benefit." (Emphasis added.) *Martin*, 2012 IL 113270, ¶ 45.

¶ 31 Here, we have not just a request from plaintiff to preserve the evidence but also a complaint and an order of court requiring preservation of the evidence. Three days after the accident, plaintiff's counsel had sent a letter to Zante and Mohiuddin demanding that they preserve the taxi. Seven days after the accident, plaintiff had filed her negligence complaint and served it on Zante and Mohiuddin. Nine days after the accident, plaintiff had obtained and served a protective order from the court requiring Zante and Mohiuddin to preserve the evidence. The letter, original complaint and order served to notify Zante and Mohiuddin within days of the accident that the taxi was evidence in a suit and must be preserved. Based on *Martin*, we find that this notice, coupled with plaintiff's factual allegation that Mohiuddin and Zante had possession and control of the taxi, is sufficient to support the existence of a special circumstance giving rise to Mohiuddin and Zante's duty to preserve the evidence

under the first prong of the *Boyd* test.

¶ 32     Mohiuddin and Zante asserted during oral argument that, even accepting that a special circumstance giving rise to a duty to preserve the evidence arose when they received plaintiff's letter on October 9, 2009, there existed a "gap" in time between the occurrence of the accident on October 6 and receipt of the letter on October 9 during which no such duty existed. Plaintiff took the position at oral argument that, once the accident happened and Mohiuddin claimed "sudden acceleration" of the taxi, Zante and Mohiuddin knew that "the cab ran away from" Mohiuddin and a special circumstance giving rise to a duty to preserve the evidence arose on the part of Mohiuddin and Zante. We find mere knowledge of the accident and of the possible causes of the accident, standing alone, is insufficient to create a duty to preserve the evidence. *Martin*, 2012 IL 113270, ¶ 45. We find that there is no authority for the proposition that, prior to delivery of the letter on October 9, 2009, a special circumstance existed that gave rise to a duty to preserve the evidence.

¶ 33     The gap here concerns not days but a mere matter of hours. Plaintiff sufficiently alleged that both components of the recorder were in the taxi from the time of the October 6, 2009, accident and "through October 8, 2009," when the taxi was moved to the Elston lot and allegedly came into defendants' possession and control. Taking this well-pleaded allegation as true, the recorder was still in the taxi "through October 8, 2009." Whether a special circumstance existed prior to the end of day on October 8, 2009, is, therefore, irrelevant because, taking the allegation as true, the recorder had not yet been removed from the taxi.

¶ 34     Given the sufficiency of plaintiff's allegation that the recorder was in the taxi through October 8, 2009, the only "gap" of consequence lies between midnight on the morning of October 9 and delivery of the October 9 overnight letter. We grant that the recorder could have been removed from the taxi by one of the defendants during this short time period in which no special circumstance gave rise to a duty to preserve the evidence. However, this span of time concerns only a few hours and plaintiff further alleges that Mohiuddin and Zante removed or allowed removal of the evidence "[b]etween October 6, 2009, and November 9, 2009" (count II, paragraph 18), a month-long period, a portion of which we hold the duty to preserve the evidence existed.

¶ 35     On a section 2-615 motion to dismiss, "the plaintiff is not required to set out evidence; only the ultimate facts to be proved should be alleged, not the evidentiary facts tending to prove such ultimate facts." *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 348 (2003). Accordingly, questions regarding whether and when the recorder was actually present in the taxi or when the loss of the recorder occurred are not addressed at the pleading stage on a section 2-615 motion to dismiss. Instead, these factual matters are for the trier of fact to decide subsequent to discovery. Since the time period alleged includes the time period where we hold that a duty to preserve the evidence could exist, we cannot find that there is no possibility that plaintiff will recover under the first prong of the *Boyd* test on the well-pleaded facts alleged in her complaint as required for dismissal under section 2-615.

¶ 36     Plaintiff's allegations regarding Zante and Mohiuddin's knowledge of the October 9, 2009, letter, the original complaint and the court order are also sufficient to support a showing that the second prong of the *Boyd* test is met, *i.e.*, that Zante and Mohiuddin's duty

to preserve the evidence extends to the specific evidence at issue, the taxi. Indeed, the letter standing alone would demonstrate that, as required under the second prong of the *Boyd* test, " 'a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action.' " *Martin*, 2012 IL 113270, ¶ 27 (quoting *Boyd*, 166 Ill. 2d at 195). Zante and Mohiuddin should have clearly foreseen that the taxi was material evidence given that, within three days of the accident, plaintiff demanded that they preserve the taxi. Compounded with service of the initial complaint and the court's order requiring preservation of the evidence shortly thereafter, Zante and Mohiuddin clearly should have known within a few days of the accident that the taxi was material evidence in a civil action. Accordingly, plaintiff's sixth amended complaint alleges facts sufficient to satisfy both prongs of the *Boyd* test with regard to Zante and Mohiuddin. The complaint is, therefore, sufficient to set forth an exception to the general rule that a defendant has no duty to preserve evidence.

¶ 37      With regard to the proximate cause and damages elements of a spoliation claim, we note that, in their brief before this court, Mohiuddin and Zante do not challenge plaintiff's assertion that the sixth amended complaint alleged sufficient facts to support a showing of proximate cause and damages. Therefore, we do not address it.

¶ 38      Plaintiff's sixth amended complaint sufficiently alleged facts to support a showing that Zante and Mohiuddin had a duty to preserve the taxi and its contents. As to Zante and Mohiuddin, the court erred in dismissing the spoliation count based on a lack of duty to preserve the evidence in question.

¶ 39                       B. Taxi Medallion, Taxi Affiliation and Wolley

¶ 40      These same factual allegations are not, however, sufficient to establish the existence of a special circumstance giving rise to a duty to preserve the evidence on the part of Taxi Medallion, Taxi Affiliation or Wolley. Even taking as true plaintiff's assertion that, after October 8, 2009, Taxi Medallion, Taxi Affiliation and Wolley were in possession and control of the taxi, mere possession and control of the taxi do not constitute special circumstances giving rise to a duty to preserve the taxi without some showing that these defendants segregated the taxi for plaintiff's benefit or knew of plaintiff's request to preserve the evidence. *Martin*, 2012 IL 113270, ¶ 45. There is no such showing here. Plaintiff's allegations are insufficient to show that Taxi Medallion, Taxi Affiliation and Wolley knew of the letter, original complaint or court order. The letter was addressed to only Mohiuddin and Zante (and to the nonexistent Checker Taxi Company, Inc.) and there is no allegation that Taxi Medallion, Taxi Affiliation and/or Wolley received a copy of the letter. Further, Taxi Medallion, Taxi Affiliation and Wolley were not named in the October 13, 2009, complaint and, therefore, were not served with either that complaint or the court's October 15, 2009, order to preserve the evidence. Plaintiff does not assert otherwise.

¶ 41      The complaint did allege that Taxi Medallion and Taxi Affiliation, due to their corporate relationship with Zante and Wolley and agreement to store the taxi, knew of the letter, complaint and court order. However, there are no well-pleaded allegations in the complaint supporting that such a relationship or agreement existed between Zante and/or Wolley and

-10-

Taxi Medallion and/or Taxi Affiliation. Nor does plaintiff assert any facts supporting a showing that Taxi Medallion, Taxi Affiliation or Wolley put the taxi in the Elston lot for her benefit. Indeed, from the complaint itself, we do not know which of the five defendants moved the taxi to the Elston lot, let alone that this was done for plaintiff's benefit.

¶ 42    Plaintiff does assert that Zante, pursuant to its association agreement with Wolley, notified Wolley of the accident within an hour of its occurrence. However, even inferring that such notice alerted Wolley that a passenger was injured and that litigation might be forthcoming, as we held above, this notice is not in any way comparable to an actual request by plaintiff that Wolley preserve the evidence, such as was discussed in *Martin*. Wolley did not own the taxi and there is nothing to support plaintiff's legal conclusion that Mohiuddin was Wolley's employee or agent, given that Zante owned the taxi. Therefore, Zante's notice to Wolley, without more, would not give rise to a duty to preserve the taxi.

¶ 43    Accordingly, the sixth amended complaint fails to sufficiently show that Taxi Medallion, Taxi Affiliation and/or Wolley segregated the taxi for plaintiff's benefit or knew of plaintiff's request to preserve the evidence. Taxi Medallion, Taxi Affiliation and Wolley's mere possession and control of the taxi, without more, did not give rise to a duty to preserve the taxi.

¶ 44    Plaintiff also argues that Taxi Medallion and Taxi Affiliation knew of the protective order and, by taking possession of the taxi at the lot they were leasing within two days of the accident, they voluntarily assumed a duty to protect and preserve the evidence. "A voluntary undertaking requires a showing of affirmative conduct by the defendant evincing defendant's intent to voluntarily assume a duty to preserve evidence." *Martin*, 2012 IL 113270, ¶ 31 (citing *Boyd*, 166 Ill. 2d at 195). Plaintff "must demonstrate affirmitive conduct by [the defendant] showing its intent to voluntarily undertake a duty to the plaintiff[ ]." *Martin*, 2012 IL 113270, ¶ 31. There is no factual allegation in the sixth amended complaint that would support such a showing. There is no well-pleaded allegation that Taxi Medallion or Taxi Affiliation moved the taxi to the Elston lot in order to preserve it for the purpose of potential future lititgation, whether for its own investigative purposes or those of plaintiff. There is no allegation that Taxi Medallion or Taxi Affiliation moved the taxi there at all. The only relevant allegations are that Taxi Medallion leased the lot, Taxi Affiliation paid for the lease and Taxi Medallion took possession of the taxi when it moved the taxi onto the lot. These allegations do not show "some affirmative acknowledgment or recognition of the duty by the party who undertakes the duty" as required for a voluntary undertaking. *Martin*, 2012 IL 113270, ¶ 36. Further, when the taxi was moved to the lot on October 8, 2009, plaintiff had not yet sent the demand letter, filed her initial complaint or requested the order of protection. Therefore, given the lack of any other showing, we infer that Taxi Medallion and Taxi Affiliation were not aware of any duty to preserve the taxi at that point. Plaintiff's complaint is not sufficient to support a showing of a voluntary undertaking by Taxi Medallion and Taxi Affiliation.

¶ 45    Citing *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112 (1998), plaintiff asserts that, because defendants were all potential litigants, they had a duty to plaintiff to take reasonable measures to preserve the evidence. She asserted that each defendant would have or should have known that the taxi's event data recorder was evidence pertinent to causes of

action brought by a passenger critically injured when the taxi crashed as a result of a "sudden acceleration" defect. In *Shimanovsky*, the defendant had moved for imposition of discovery sanctions where the plaintiffs had altered a key piece of evidence prior to trial. *Martin*, 2012 IL 113270, ¶ 50 (citing *Shimanovsky*, 181 Ill. 2d at 115). As our supreme court explained in *Martin*, "[p]laintiffs' argument that the reasoning in *Shimanovsky* is applicable to a claim for negligent spoliation of evidence has been considered, and rejected, previously by this court." *Martin*, 2012 IL 113270, ¶ 51 (citing *Dardeen*, 213 Ill. 2d at 339). Accordingly, the test applied in *Shimanovsky* is not relevant here and does not support plaintiff's argument. *Martin*, 2012 IL 113270, ¶ 51.

¶ 46        Plaintiff's complaint did not state sufficient facts to show that an agreement, contract, statute, special circumstance, or voluntary undertaking gave rise to a duty to preserve the event data recorder on the part of Taxi Medallion, Taxi Affiliation or Wolley. It, therefore, failed to allege facts sufficient to meet the first prong of the *Boyd* test with regard to these three defendants and they, therefore, had no duty to preserve the recorder. *Martin*, 2012 IL 113270, ¶ 53. Because we find plaintiff's complaint insufficient to support the existence of Taxi Medallion, Taxi Affiliation or Wolley's duty to preserve the recorder under the first prong of the *Boyd* test, we need not address the second prong of the *Boyd* test with regard to these defendants. *Martin*, 2012 IL 113270, ¶ 53.

¶ 47        On appeal, Taxi Medallion, Taxi Affiliation and Wolley raised the issue of whether the sixth amended complaint sufficiently alleged proximate cause to survive a motion to dismiss. As we find Taxi Medallion, Taxi Affiliation and Wolley had no duty to preserve the evidence, we decline to address this issue.

¶ 48        The court did not err in dismissing plaintiff's spoliation of evidence claims against Taxi Medallion, Taxi Affiliation and Wolley

¶ 49                                        Conclusion

¶ 50        For the reasons stated above, we reverse the trial court's dismissal of count II against Zante and Mohiuddin. We affirm the court's dismissal of the counts III, IV and V against Wolley, Taxi Medallion and Taxi Affiliation.

¶ 51        Reversed in part and affirmed in part.