# Illinois Official Reports

## Appellate Court

*Northbrook Bank & Trust Co. v. 2120 Division LLC*, 2015 IL App (1st) 133426

| | |
|---|---|
| Appellate Court Caption | NORTHBROOK BANK AND TRUST COMPANY, Plaintiff-Appellee, v. 2120 DIVISION LLC, an Illinois Limited Liability Company, 1353 SEDGWICK LLC, an Illinois Limited Liability Company, OLDTOWN MANAGEMENT LLC, an Illinois Limited Liability Company, and ALEX BOLTIN, Defendants-Appellants. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-3426 |
| Filed | December 3, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-49709; the Hon. John H. Ehrlich, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Daniel J. Voelker and Olga S. Dmytriyeva, both of Chicago, for appellants.<br><br>Michael M. Tannen and Ted D. Hartman, both of Tannen Law Group, P.C., of Chicago, for appellee. |

Panel      PRESIDING JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Howse and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1  This is an appeal from the foreclosure of separate mortgage loans taken in 2007 and 2008 by three limited liability companies and personally guaranteed by Alex Boltin. After judicial sales netted less than the mortgage debts, the trial judge confirmed the sales and entered joint and several deficiency judgments against the companies and Boltin for $359,193, $262,702, and $2,279,954, or a total of nearly $3 million. We will refer to these appellants collectively as the borrowers or the Boltin defendants. The party we refer to as the lender is Northbrook Bank & Trust Company, or Northbrook Bank, which was not the original lender. The original lender was Ravenswood Bank, a Chicago entity that failed in 2010 and was taken over by the Federal Deposit Insurance Corporation. The FDIC sold the Boltin mortgage notes and other assets to Northbrook Bank. The Boltin defendants contend the trial judge erred by striking their affirmative defenses as factually deficient and barred by a principle of banking law that when the FDIC or its assignees attempt to collect on a failed bank's promissory note, the borrower or guarantor is estopped from relying on an unrecorded agreement with the failed bank. See *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447 (1942). The second claim on appeal is that granting the lender's motion for summary judgment was in error because the decision was based on an affidavit from a Northbrook Bank vice president who, according to the borrowers, had no personal knowledge of loan records created and maintained by Ravenswood Bank. Northbrook Bank timely filed a response brief, but the borrowers have not filed a reply brief.

¶ 2  We first consider the lender's contentions that some of the appellate arguments are moot or have been forfeited or waived. The lender argues that any portion of the appeal which would affect the rights, titles, or interests of third-party purchasers of the subject real estate should be dismissed as moot because the Boltin defendants failed to obtain a Rule 305(k) order staying execution of the judgment before filing their notice of appeal. Ill. S. Ct. R. 305(k) (eff. July 1, 2004). This rule provides:

> "(k) Failure to Obtain Stay; Effect on Interests in Property. If a stay is not perfected within the time for filing the notice of appeal, or within any extension of time granted *** , the reversal or modification of the judgment does not affect the right, title, or interest of any person who is not a party to the action in or to any real or personal property that is acquired after the judgment becomes final and before the judgment is stayed; nor shall the reversal or modification affect any right of any person who is not a party to the action under or by virtue of any certificate of sale issued pursuant to a sale based on the judgment and before the judgment is stayed." Ill. S. Ct. R. 305(k) (eff. July 1, 2004).

¶ 3  Thus, Rule 305(k) protects a third-party buyer from the reversal or modification of a judgment regarding that property. Furthermore, it is well established that without a stay, an

appeal seeking possession or ownership of specific property that has already been conveyed to a third party is moot. *Town of Libertyville v. Moran*, 179 Ill. App. 3d 880, 886, 535 N.E.2d 82, 86 (1989).

¶ 4 The subject properties are in Chicago and include a ground commercial unit and first floor residential condominium unit in a four-unit building at 2120 West Division Street, a commercial unit located in a four-unit building at 1353 North Sedgwick Street, and a very large single-family residence situated at 331-333 West Schiller Street. At the court-ordered sheriff's sale, Northbrook Bank credit bid on the four properties, meaning that it bid the amount it was owed for the loans, interest, and the expenses of foreclosing. See 2 Michael T. Madison, Jeffrey R. Dwyer & Steven W. Bender, Law of Real Estate Financing § 12:84 (updated July 2015). It was outbid on only the Schiller property. The trial judge confirmed the four sales on September 23, 2013, and the Boltin defendants filed their notice of appeal within 30 days. Because there was no stay on the enforcement of the judgment orders, the lender sold the Division Street residential unit to a third party on December 5, 2013; the Division Street commercial unit to a third party on April 8, 2014; and the Sedgwick property on December 10, 2014.

¶ 5 The lender is not asking us to disregard any of the borrowers' appellate arguments, but to instead curtail the effect of our ruling in accordance with Rule 305 so that we do not diminish the rights of the third-party purchasers. However, we need not analyze this request until it becomes apparent whether the appeal is successful in undoing the judgment order. We will return to this argument below.

¶ 6 The lender next contends we should limit the scope of our consideration to the only order listed in the borrowers' notice of appeal, which is the order confirming the judicial sales. The lender argues that by failing to list the orders striking the affirmative defenses and granting summary judgment, the borrowers forfeited or waived review of any error in those rulings. We are not persuaded by this argument.

¶ 7 Illinois Supreme Court Rule 303(b)(2) requires a notice of appeal to "specify the judgment or part thereof *** appealed from and the relief sought from the reviewing court." Ill. S. Ct. R. 303(b)(2) (eff. Jan. 1, 2015). However, the briefs, not the notice of appeal itself, specify the precise points to be relied on for reversal. *In re Estate of Sewart*, 274 Ill. App. 3d 298, 300 n.1, 652 N.E.2d 1154 n.1 (1995). "The notice of appeal, which is to be liberally construed, serves the purpose of informing the prevailing party in the trial court that the unsuccessful litigant seeks a review by a higher court." *Sewart*, 274 Ill. App. 3d at 300 n.1, 652 N.E.2d at 1154 n.1. Where the notice adequately sets forth the judgment complained of and the relief sought, the notice is effective and the appellate court has jurisdiction to consider the issues. *CitiMortgage, Inc. v. Bukowski*, 2015 IL App (1st) 140780, ¶ 13, 26 N.E.3d 495; *Taylor v. Peoples Gas Light & Coke Co.*, 275 Ill. App. 3d 655, 659, 656 N.E.2d 134, 138 (1995).

¶ 8 It is not necessary that the notice of appeal identify a particular order to confer jurisdiction, as long as the order that is identified in the notice of appeal directly relates back to the order or judgment sought to be reviewed. *Taylor*, 275 Ill. App. 3d at 659, 656 N.E.2d at 138. Stated another way, an appeal from a final judgment order entails review of not only the final judgment order, but also any interlocutory orders that were a "step in the procedural progression" leading to the judgment. (Internal quotation marks omitted.) *Bukowski*, 2015 IL App (1st) 140780, ¶ 13, 26 N.E.2d 495. This well-established principle is illustrated by *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 431-36, 394 N.E.2d 380, 381-84 (1979), in

which the court held that a notice of appeal referring only to a final judgment order was sufficient to confer jurisdiction to review a prior order for an accounting, because the final judgment was based on the accounting. In *Perry v. Minor*, 319 Ill. App. 3d 703, 708-09, 745 N.E.2d 113, 118 (2001), orders barring the presentation of testimony or evidence at trial were directly related to the final judgment order and, thus, were reviewable based on a notice of appeal referencing only the final judgment order. However, in *Illinois Central Gulf R.R. Co. v. Sankey Brothers, Inc.*, 78 Ill. 2d 56, 61, 398 N.E.2d 3, 5 (1979), where the notice of appeal listed only a summary judgment order and not an earlier order dismissing a counterclaim, the court had no jurisdiction to review the propriety of the dismissal. And, in *Long v. Soderquist*, 126 Ill. App. 3d 1059, 1062, 467 N.E.2d 1153, 1155 (1984), a notice of appeal from a summary judgment order as to certain counts against certain defendants, that did not refer to an earlier order dismissing other counts against other defendants, did not permit the reviewing court to consider the dismissal.

¶ 9        While the instant appeal was pending, a mortgage lender's contention that its borrower's notice of appeal was defective was rejected by another panel of this First District in *Bukowski*, 2015 IL App (1st) 140780, ¶ 13, 26 N.E.3d 495. The only order referenced in the notice of appeal in that case was an order confirming the judicial sale, and, like here, the lender contended that the appellate court should not review the dismissal of affirmative defenses or the entry of summary judgment. *Bukowski*, 2015 IL App (1st) 140780, ¶ 12, 26 N.E.2d 495. The court denied the lender's request, because the orders dismissing the defendant's affirmative defenses and entering summary judgment for the plaintiff were steps in the procedural progression of the foreclosure action that ultimately led to the confirmation of the sale. *Bukowski*, 2015 IL App (1st) 140780, ¶ 13, 26 N.E.2d 495. The court also noted that when the notice of appeal was issued (whose essential purpose is to advise the prevailing party of the nature of the appeal), the lender was "undoubtedly aware" that the only basis for appeal would be the arguments that had been presented in the trial court. *Bukowski*, 2015 IL App (1st) 140780, ¶ 13, 26 N.E.2d 495.

¶ 10        We find that the precedent, and in particular, *Bukowski*, indicates that the orders dismissing the Boltin defendants' affirmative defenses and granting summary judgment for the lender were steps in the procedural progression leading to the order confirming the judicial sales, and that by listing only the confirmation of sale order in their notice of appeal, the Boltin defendants encompassed review of those earlier orders. Furthermore, the lender has remarked on the considerable attention and time that the lender, borrowers, and trial judge spent with the affirmative defenses, such as the "docket for this case is 73 pages long," motion practice on defects in the borrowers' answer and three amended answers "lasted more than 600 days," and that when the court eventually denied the borrowers leave to refile, the court was allowing the lender "at long last to move for summary judgment." Surely then, this lender, like the lender in *Bukowski*, was aware when it received the notice of appeal that the appellants would be revisiting the affirmative defenses they presented in the trial court. In fact, the lender criticizes the opening brief on appeal as a "cut-and-paste brief, which, but for the citation of two cases, is word-for-word identical to motions filed in and rejected by the trial court." The lender argues that although *Bukowski* specifically addressed the procedural progression of a mortgage foreclosure action, we should disregard the opinion, because the court was not asked to consider the current arguments about the bifurcated nature of foreclosure proceedings or to consider that a borrower's grounds for setting aside a default judgment of foreclosure are

limited by statute once the lender has filed a motion to confirm sale (see *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 27, 999 N.E.2d 321 (indicating that prior to the filing of the motion to confirm sale, the borrower may seek to vacate the default judgment of foreclosure under the standards set forth in section 2-1301(e) of the Code of Civil Procedure (735 ILCS 5/2-1301(e) (West 2010)), but after the motion to confirm has been filed, the borrower's arguments are limited by section 15-1508(b) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/1508(b) (West 2010))). However, regardless of whether we describe this legal action as a single case, a bifurcated process, or in multiple stages, an order entered at any point in the proceedings could be characterized as a procedural step that culminated in the final judgment order. Thus, the question is not whether we can categorize the suit into distinct phases or when the order was entered but whether the order directly relates to the final order specified in the notice of appeal. In this case, the affirmative defense and summary judgment orders directly relate to the final judgment order specified in the notice of appeal. Therefore, it is appropriate for us to review the orders discussed in the appellants' opening brief and we deny the lender's motion to limit our review on the basis of the contents of the notice of appeal.

¶ 11 The lender also argues that the Boltin defendants forfeited review of the dismissal of their affirmative defenses, because the defenses appear in their original answer but not in their first, second, or third amended answers. The lender is relying on the principle that when a party files an amended pleading that does not restate prior allegations or incorporate by reference a prior pleading, then the earlier allegations are considered "abandoned and withdrawn" and the party has waived any objection to the trial court's ruling on the former pleading. (Internal quotation marks omitted.) *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 154, 449 N.E.2d 125, 126 (1983) (filing an amended complaint waives review of trial judge's rulings on the original complaint). Repleading ensures that the opposing party and the courts will be aware of the points at issue. *Foxcroft*, 96 Ill. 2d at 154, 449 N.E.2d at 126. It is not considered unduly burdensome for a party to incorporate into its final pleading all the allegations that it wants to preserve for appellate review. *Foxcroft*, 96 Ill. 2d at 154, 449 N.E.2d at 127. In fact, the effort to replead can be quite minimal, and a simple paragraph or footnote in an amended pleading expressing a desire to preserve dismissed claims would be sufficient to preserve those issues for appellate review. *Bonhomme v. St. James*, 2012 IL 112393, ¶ 26 n.1, 970 N.E.2d 1 n.1; *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 312, 662 N.E.2d 602, 607 (1996) (finding that a footnote stating prior complaints were attached to preserve dismissed claims for appeal was effective).

¶ 12 We have considered the lender's argument and the content of the borrowers' four answers and find it apparent that although the amended versions do not properly separate the borrowers' denials from their affirmative defenses, each amendment was an attempt to improve and elaborate on the prior allegations in order to factually state affirmative defenses. Illinois authority indicates that the failure to properly designate an affirmative defense as an affirmative defense is merely a technical defect which may be overlooked if the allegations set out the necessary elements of the defense. *Capital Development Board ex rel. P.J. Gallas Electrical Contractors, Inc. v. G.A. Rafel & Co.*, 143 Ill. App. 3d 553, 557-58, 493 N.E.2d 348, 351 (1986); 735 ILCS 5/2-603(b) (West 2010) ("each count, counterclaim, defense or reply, shall be separately pleaded, designated and numbered"); 735 ILCS 5/2-603(c) (West 2010) ("[p]leadings shall be liberally construed with a view to doing substantial justice between the parties"); *American National Bank & Trust Co. v. Mar-K-Z Motors & Leasing Co.*, 11 Ill. App.

3d 1046, 298 N.E.2d 209 (1973) (in light of principle that substantial justice between the parties may require the liberal construction of pleadings, part of an answer which contained the necessary elements of a counterclaim, other than designation as such, was treated as a counterclaim).

¶ 13 Accordingly, we will consider the appellants' arguments, the first of which is whether the trial judge erred in striking their affirmative defenses as factually deficient and barred by the *D'Oench* doctrine. *D'Oench*, 315 U.S 447.

¶ 14 An affirmative defense assumes that the defendant would otherwise be liable, if the facts alleged by the plaintiff are true, but asserts new matter by which the plaintiff's apparent right to recovery is overcome. *Vroegh v. J&M Forklift*, 165 Ill. 2d 523, 530, 651 N.E.2d 121, 125-26 (1995). An affirmative defense is comprised of allegations that do not negate the essential elements of the plaintiff's cause of action, but rather admit the legal sufficiency of the cause of action, and assert new matter by which the plaintiff's apparent right of recovery is defeated. *Vroegh*, 165 Ill. 2d at 530, 651 N.E.2d at 125-26.

¶ 15 The facts establishing an affirmative defense must be stated in the defendant's answer with the same degree of specificity that is required of a plaintiff stating a cause of action. *International Insurance Co v. Sargent & Lundy*, 242 Ill. App. 3d 614, 630, 609 N.E.2d 842, 854 (1993). A motion to dismiss an affirmative defense pursuant to section 2-615 of the Code of Civil Procedure, as with all section 2-615 motions, admits all well-pled facts constituting the defense and attacks only the legal sufficiency of those facts. *Sargent & Lundy*, 242 Ill. App. 3d at 630, 609 N.E.2d at 854; 735 ILCS 5/2-615 (West 2010).Where the well-pled facts of an affirmative defense raise the possibility that the defendant will prevail, the defense should not be dismissed and a court of review will vacate a dismissal that was entered in error. *Farmer City State Bank v. Guingrich*, 139 Ill. App. 3d 416, 422, 487 N.E.2d 758, 762 (1985). In reviewing the sufficiency of an affirmative defense, we are to disregard any conclusions of fact or law not supported by allegations of specific fact. *Hartmann Realtors v. Biffar*, 2014 IL App (5th) 130543, ¶ 20, 13 N.E.3d 350. We review *de novo* an order striking an affirmative defense on the basis of sufficiency. *Hartmann Realtors*, 2014 IL App (5th) 130543, ¶ 20, 13 N.E.3d 350.

¶ 16 In its amended verified complaint, Northbrook Bank described the creation of the mortgage and construction loans in 2007 and 2008 and the modifications in 2008, 2009 and 2010 by its predecessor-in-interest, Ravenswood Bank, and the Boltin defendants, and that the borrowers failed to repay their debts. Northbrook Bank included supporting exhibits and specified how it calculated the amounts it was seeking in its lawsuit.

¶ 17 For example, with respect to the commercial unit and residential unit on Division Street, some of the allegations and responses were as follows:

> "13. On or about October 30, 2007, Ravenswood Bank extended a construction loan to Division LLC in the original principal amount of $1,106,000.00 evidenced by a *Mortgage Note*; Modified by an *Amendment to Mortgage Note and Construction Loan Agreement* on or about October 25, 2008; and yet again modified on or about June 30, 2009 by an *Amended and Restated Mortgage Note*, which increased the principal to $1,253,000.00 and extended the maturity date to October 25, 2010. The *Mortgage Note*; *Amendment to Mortgage Note and Construction Loan Agreement*; and *Amended and Restated Mortgage Note* may be collectively referred to herein as the 'Division Note,' and true and accurate copies of same are attached hereto as **Exhibit A**.

> **ANSWER**: Defendants deny that all of the dates are accurate, but admit the truth of the remaining allegations contained in Paragraph 13 of the Second Amended Complaint.
>
> 14. The Division Note, as amended, expressly provides that it is secured by, *inter alia*, the Division Mortgage, the Sedgwick Mortgage, and the Oldtown Mortgage, all as defined and further described below. (**Exhibit A**, *Amended and Restated Mortgage Note*, at pp. 2-3 ¶¶ A, I & J.
>
> **ANSWER**: Defendants admit the truth of the allegations contained in Paragraph 14 of the Second Amended Complaint."

¶ 18    Next, the lender alleged that the lender fully performed its obligations under the Division Street contracts; however, the Boltin defendants denied the allegation and set out their affirmative defense:

> "22. Northbrook Bank, by and through its predecessor-in-interest Ravenswood Bank, fully performed all of its obligations under the Division Loan Documents, including but not limited to disbursing substantial loan funds to Division LLC in accordance with the terms and conditions set forth in the Division Loan Documents.
>
> **ANSWER**: Defendants deny the allegations in Paragraph 22 of the Amended Complaint. More specifically, Ravenswood Bank failed to perform its obligations under the *written* loan agreement by failing to timely fund the construction loan and by acting in a dual role as both lender and general contractor of the construction project, and as a result, caused the default on the loan agreements. More specifically, on several occasions when Defendants were not in default under the Loan, Defendants fully satisfied the 'Conditions Precedent to Disbursement' of the Construction Loan Agreement, dated October 30, 2007 (Construction Loan Agreement at ¶ 4, 'Conditions Precedent to Disbursement,' Exhibit "C" to Plaintiff's Verified First Amended Complaint to Foreclose Mortgage and for Other Relief), but, nevertheless, Plaintiff failed and refused, without just reason, to fund said loan. On each of these several occasions, Defendants also satisfied all conditions contained in Paragraph 6, 'Disbursement of the Loan' of the same Construction Loan Agreement. These delays in funding caused interest to accrue on the Notes unnecessarily and resulted in Defendants not having sufficient loan proceeds available to complete the project and pay off the Loans to the banks.
>
> 23. As described in further detail herein, Division LLC defaulted on its obligations to Northbrook Bank under the Division Mortgage and Division Note when it failed to make a required monthly interest payment on May 25, 2010 and continuing thereafter.
>
> **ANSWER**: [Defendants repeated their response to paragraph 22.]
>
> 24. As described in further detail herein, Division LLC defaulted on its obligations to Northbrook Bank under the Division Loan Documents when the Division Note matured on October 25, 2010, and Division LLC failed to pay to Northbrook Bank the entire outstanding principal and accrued interest.
>
> **ANSWER:** [Defendants again repeated their response to paragraph 22.]"

¶ 19    This format of allegation and answer/repetition of paragraph 22 continued with respect to the other properties. According to Northbrook Bank, the Boltin defendants repeated the statement in paragraph 22 a total of 44 times in their third amended answer. Northbrook Bank

moved to strike the third amended answer as deficient on facts, and after briefing and oral arguments, the trial judge granted the motion and did not grant further leave to amend the answer.

¶ 20    Now, in apparent reliance on paragraph 22 and its numerous reiterations in the third amended answer, the Boltin defendants contend they alleged "sufficient facts to support their defenses" and that if there was a need to interpret the facts or draw any inference from them, those interpretations and inferences should have been drawn in their favor. Although they listed nine affirmative defenses in their original answer (breach of duty of good faith and fair dealing; fraud; breach of duty to mitigate; breach of fiduciary duty; coventurer or partnership; statute of limitations; and waiver, estoppel, and laches), on appeal they address only the first defense and have, therefore, waived our review of the others. *Roiser v. Cascade Mountain, Inc.*, 367 Ill. App. 3d 559, 568, 855 N.E.2d 243, 252 (2006) (appellant's failure to provide reasoned argument results in waiver of appellate consideration); Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) ("Points not argued [in the appellant's brief] are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 21    The duties of good faith and fair dealing in performing the terms of a contract are duties that are implied in every contractual relationship. *Bank One, Springfield v. Roscetti*, 309 Ill. App. 3d 1048, 1059-60, 723 N.E.2d 755, 763 (1999); *Prudential Insurance Co. of America v. McCurry*, 143 Ill. App. 3d 222, 225, 492 N.E.2d 1026, 1028 (1986) (a covenant of good faith and fair dealing in performance is implied in every contract as a matter of law, absent an express disavowal). The duties of good faith and fair dealing are an implied agreement to refrain from doing anything which will destroy or injure the other party's right to receive the fruits of the contract. *Prudential Insurance Co. of America v. Van Matre*, 158 Ill. App. 3d 298, 308, 511 N.E.2d 740, 746 (1987) (citing 17A C.J.S. *Contracts* § 328, at 286 (1963)).

¶ 22    There are, however, no factual statements or exhibits which substantiate the conclusory statements that Ravenswood Bank "failed to perform its obligations," "failed and refused *** to fund such loan," and acted "in a dual role as both lender and general contractor of the construction project, and as a result, caused the default on the loan agreements." Focusing on the first statement, there are no facts, such as the dates and dollar amounts, supporting the conclusion that the bank "failed to perform its obligations." And the subsequent allegation, "More specifically, on several occasions *** Plaintiff failed and refused *** to fund such loan" does not actually provide any specifics. Even when we read paragraph 22 as a whole, it is unclear what the lender specifically did or failed to do in breach of its duties of good faith and fair dealing in the performance of its contracts with the borrowers. There is also no factual basis for the statement that Ravenswood Bank had "a dual role as both lender and general contractor of the construction project."

¶ 23    Furthermore, the Boltin defendants cite the principle that in a section 2-615 proceeding, all inferences and interpretations *of the facts* are to be construed in favor of the non-moving party, but there are no *facts* alleged from which we might draw inferences or make interpretations. Because Illinois is a fact pleading jurisdiction, we must disregard conclusions of fact or law that are unsupported by specific factual allegations. *Kilburg v. Mohiuddin*, 2013 IL App (1st) 113408, ¶ 20, 990 N.E.2d 202. Conclusions of fact or law are insufficient to state a cause of action regardless of whether they generally inform the defendant of the nature of the claim against him. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 22, 984 N.E.2d 132.

¶ 24    The Boltin defendants also argue they "clearly spelled out" their affirmative defenses, but they support this argument by citing portions of their original answer to the second amended complaint, which is a version of their answer that they abandoned and withdrew by amending it (three times). *Foxcroft*, 96 Ill. 2d at 154, 449 N.E.2d at 126. None of the prior versions of the answer are at issue and none can be used to show that the trial judge erred when he dismissed the final version. We consider the Boltin defendants' reliance on the abandoned version to be an implicit concession that the latest version lacks sufficient factual allegations to state an affirmative defense.

¶ 25    Furthermore, even that prior pleading lacks sufficient facts. According to that pleading, Boltin's intention for the Schiller Street property was to construct a building with eight two-bedroom condominium units and an underground parking lot, and he went so far as to get approved for a $2.5 million construction loan, obtain building permits, and begin to prepare the building's foundation. However, he realized he would need more land to actually complete the condominium project and that he would have to borrow an additional $100,000 to purchase it. He spoke with Eric Hubbard, who was Ravenswood Bank's president, chief lending officer, and a member of its board of directors and also the owner of his own real estate management company. Hubbard refused to increase Boltin's loan and said " 'everything would be all right' " if Boltin instead built a 6,800 square foot single-family home and retained Metro Home Chicago as the project's general contractor. The Boltin defendants "could have sold or rented" the condominiums and were opposed to constructing a single-family home in a neighborhood where there were only multi-unit buildings and horse stables. The general contractor that Hubbard told Boltin to use, Metro Home Chicago, was owned by Roger Luri, who was also a real estate broker and the bank's chief executive officer and a member of its board of directors. At the time, Boltin was unaware that Luri had roles at the bank and thus had a conflict of interest. (The pleading does not elaborate on the conflict of interest.) Luri "and Ravenswood Bank promised and convinced Defendants that they already had a buyer for the single-family home, who would immediately purchase it when construction was completed, or even before the completion of it, at a substantial profit to the Defendants." However, "[d]uring the project, Luri, Hubbard, and Ravenswood Bank engaged in three unjustified work stoppages, which totaled approximately ten (10) month[s], and charged Defendants a commercially unreasonable fee of fifteen percent (15%) for Luri's and Ravenswood Bank's role in the project. " Because of the accumulating interest, Ravenswood Bank was able to force the Boltin defendants to cross-collaterize the Schiller loan with other assets. And, then, "[u]pon information and belief, that conduct, and possibly other conduct, caused a breach of loan agreements between Ravenswood Bank and Defendants which was completely, or substantially, responsible for the delinquency of the loan."

¶ 26    Although the allegations are somewhat unclear, the gist is that (1) Hubbard, in his capacity at Ravenswood Bank, made promises and misrepresentations which induced the Schiller corporation and Boltin to borrow money to build a single-family home; (2) Luri's brokerage and general contracting companies overcharged for their work; and (3) Luri engaged in work stoppages on the Schiller construction; which entitled Ravenswood Bank to delay loan disbursements to Luri's company, increase the interest debt, connect the various loans, and then, in some unstated way, cause the Boltin defendants to become delinquent on the loans. The Boltin defendants argue these allegations "clearly spelled out" that "once Boltin hired Luri and [his company] Metro Home Chicago (at Ravenswood's insistence), [the bank] had

- 9 -

complete control of the construction and the use of the loan proceeds for the construction." We fail to see how it would be advantageous to the general contractor or lender to delay the pace of construction without cause and impair a borrower's ability to make timely installment payments to its contractor and lender, but in any event, the specific allegations are that Luri's company, not the bank, caused work stoppages which disrupted the repayments and caused the defaults. The pleading lacks any factual allegations indicating that the conduct of the general contractor should be attributed to the bank and entitle the borrowers to avoid their repayment obligations to the bank. Furthermore, the pleading lacks specific allegations indicating the borrowers satisfied the conditions precedent for loan disbursements, showing that Luri's work stoppages were unjustified, and explaining how delaying the Schiller construction impaired not only the repayment of the Schiller loan but also the Division and Sedgwick loans. Again, the principle that all possible inferences and interpretations of the facts are to be drawn in favor of the Boltin defendants is not triggered by conclusory and incomplete allegations. *Kilburg*, 2013 IL App (1st) 113408, ¶ 20, 990 N.E.2d 202. When we disregard all the conclusions of fact or law not supported by allegations of specific fact (*Hartmann Realtors*, 2014 IL App (5th) 130543, ¶ 20, 13 N.E.3d 350), we can only conclude that this abandoned version of the answer does not state an affirmative defense to the bank's allegations for foreclosure.

¶ 27    The Boltin defendants also argue that a clause in one of the 2008 loan modification contracts is ineffective and does not prevent them from relying on the affirmative defense of breach of the duties of good faith and fair dealing. That clause states, "11. Each Obligor hereby ratifies and confirms his or its respective obligations and liabilities *** and acknowledge that he or it have no defenses *** against the enforcement by Lender of their respective obligations and liabilities under the amended Note, the Guaranty and other Loan documents, as so amended." The Boltin defendants contend that when they executed this contract, they were unaware of the potential for an affirmative defense to this foreclosure suit and, thus, could not have effectively released this defense. Given our conclusion that the Boltin defendants failed to factually plead an affirmative defense, this clause has no bearing on the appeal and we need not analyze the argument.

¶ 28    Another major obstacle facing the Boltin defendants is that even if they had set out sufficient facts, their affirmative defense is barred by the *D'Oench* doctrine. The premise of the affirmative defense is that, but for Hubbard's promises (he said " 'everything would be all right' " if the building plans changed from an eight-flat to a single-family home and Luri's company became the general contractor) and lack of disclosure (Luri was not only a general contractor but was also involved in the bank's leadership), the Boltin defendants would not have changed the construction plans, taken the Schiller loan, and hired Luri's company, which were decisions that led to the Schiller loan delinquency, cross-collateralization, and all three defaults. Hubbard's alleged representations or conditions are unrecorded terms between the lender and the borrowers which *D'Oench* bars as a defense to a foreclosure action by the FDIC or the FDIC's assignee.

¶ 29    The *D'Oench* doctrine is both a common law and statutory principle that applies to the FDIC and its assigns when dealing with the loans of a failed lender. *Community Bank of the Ozarks v. Federal Deposit Insurance Corp.*, 984 F.2d 254 (8th Cir. 1993). According to Northbrook Bank, it was required to obtain the FDIC's permission to invoke the special powers of the *D'Oench* doctrine in these proceedings and the FDIC gave its approval.

¶ 30    The doctrine arose from a 1942 Supreme Court decision in which the FDIC, as the receiver for a failed bank, brought an action against the maker of a $5,000 demand note, and the court held that the maker could not rely on an affirmative defense that was not apparent from the face of the agreement (lack of consideration). *D'Oench*, 315 U.S. at 456. The bank's president and the maker executed the note with the understanding that it was not genuine and the bank would enforce only the interest terms. *D'Oench*, 315 U.S. at 456. The bank president wanted to have the $5,000 demand note in the bank's portfolio in order to falsely inflate the bank's assets and conceal its true health from bank examiners. *D'Oench*, 315 U.S. at 456. The court ruled that the FDIC was entitled to rely on the bank's official records of its rights and obligations and to disregard the additional terms between the bank president and note maker. *D'Oench*, 315 U.S. 447. The doctrine has expanded into a rule that protects the FIDC, as receiver of a failed bank or as a purchaser of its assets, from a borrower who has " 'lent himself to a scheme or arrangement' whereby banking authorities are likely to be misled." *Beighley v. Federal Deposit Insurance Corp.*, 868 F.2d 776, 784 (5th Cir. 1989) (quoting *D'Oench*, 315 U.S. at 460). The doctrine applies even when the borrower does not intend to deceive banking authorities. *Beighley*, 868 F.2d at 784.

¶ 31    Eight years after *D'Oench* was decided, Congress codified the doctrine in the Federal Deposit Insurance Act. See 12 U.S.C. § 1823(e)(1) (2012). The public policy that underlies the precedent and statute is "to allow federal and state examiners to rely on a bank's records in evaluating the worth of the bank's assets, to encourage prudent consideration in lending, and to assure proper [contemporaneous] recordation of banking acts to guard against collusive or erroneous reconstruction of terms." *Community Bank of the Ozarks*, 984 F.2d at 256-57 (citing *Langley v. Federal Deposit Insurance Corp.*, 484 U.S. 86, 91-93 (1987)).

¶ 32    Thus, defenses based on representations that are not recorded in the financial institution's official documents are barred, including fraud in the inducement, misrepresentations, and oral modifications. *Community Bank of the Ozarks*, 984 F.2d at 257; *Bowen v. Federal Deposit Insurance Corp.*, 915 F.2d 1013, 1016 (5th Cir. 1990) ("transactions not reflected on the bank's books do not appear on the judicial radar screen either"). In *Langley*, for instance, borrowers contended their notes were procured by the bank's misrepresentations that certain Louisiana property was larger than it was, included 400 mineral acres when it contained only 75 acres, and that there were no mineral leases encumbering it, when in fact there were mineral leases. *Langley*, 484 U.S. at 89. "[T]he essence of [the borrowers'] defense against the note is that the bank made certain warranties regarding the land, the truthfulness of which was a condition to performance of their obligation to repay the loan." *Langley*, 484 U.S. at 90-91. There was no record of these representations in the notes and personal guarantees that the parties executed, nor did they appear in the bank's records or in the minutes of its board of directors or loan committee. *Langley*, 484 U.S. at 89. Accordingly, once the FDIC was appointed as receiver and substituted for the bank, the borrowers were not permitted to rely on these terms as conditions or defenses to payment of the notes. *Langley*, 484 U.S. at 89.

¶ 33    Similarly, here, the borrowers are arguing that certain statements were made and the truthfulness of those assurances is a condition to the performance of their obligation to repay the loans. Also, here, however, there is no indication in any bank record or other document cited by the borrowers that Ravenswood Bank conditioned the Schiller loan on the borrowers replacing the condominium project they intended with plans to construct a single-family home, required the borrowers to use Luri's company as the project's general contractor, or assured the

borrowers that if they took these steps, there would be a buyer waiting to purchase the home at a price that was profitable to the borrowers. Although the borrowers contend these conditions or promises are what led to Luri's company being in the position to cause 10 months of work stoppages, increased interest, amendments to the loan agreements, and ultimately the borrowers' default, the borrowers may not rely on these oral statements as an affirmative defense to the bank's allegations. *Langley*, 484 U.S. at 89.

¶ 34 The borrowers contend the *D'Oench* doctrine applies only to "secret" or "unwritten, oral misrepresentations" and does not apply here because the FDIC and Northbrook Bank should have been put on notice by the written loan records that there was an improper relationship between Ravenswood Bank and Luri's contracting company, Metro Home Chicago, because "Metro Home Chicago" clearly appears in the loan documents. Therefore, although Boltin contends Ravenswood Bank's loan records did not make him aware of Luri's various roles, these same records should have made the FDIC and Northbrook Bank aware of this impropriety. This is unpersuasive in part because *D'Oench* means that the FDIC examiners were not expected to second guess the "facially unencumbered notes," could rely on the analysis of their "[s]preadsheet experts" rather than seek the opinions of "historians" and "soothsayers," and did not have a "duty to compile oral histories of the bank's customers and loan officers." *Bowen*, 915 F.2d at 1016. When the FDIC is deciding whether to liquidate a failed bank or take another course of action, time is of the essence. The FDIC's evaluation "must be made 'with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services.' " *Langley*, 484 U.S. at 91 (quoting *Gunter v. Hutcheson*, 674 F.2d 862, 865 (11th Cir. 1982)). The FDIC would not be able to make a reliable and timely evaluation if it was held to the investigative standard that the Boltin defendants now propose. The FDIC is entitled to act under the assumption that bank records containing seemingly unqualified notes are not in fact subject to undisclosed conditions. *Langley*, 484 U.S. at 91. Furthermore, even if the FDIC examiners had realized in this instance that Luri had multiple roles in the financing and construction of the financed project, the examiners would have no apparent basis for concluding that the arrangement was a condition of the loan. There are no bank records indicating the financial institution or any individual required Boltin to hire Luri's company, forced him to replace the condominium plans with the large single-family home that could not be rented or sold like the individual condominium units, or promised Boltin that a ready buyer was awaiting the completion of a single-family home. Therefore, regardless of whether "Metro Home Chicago" or Luri's name appears somewhere in the loan file, *D'Oench* bars the affirmative defense.

¶ 35 The Boltin defendants cite *Community Bank of the Ozarks* but do not discuss the case or argue that it supports their position on appeal. To the contrary, in *Community Bank of the Ozarks*, the court affirmed the trial judge's determination that *D'Oench* and 12 U.S.C. § 1823 barred a defense based on terms that were not recorded in the bank's files. *Community Bank of the Ozarks*, 984 F.2d 254; 12 U.S.C. § 1823 (2012). Similar to the Boltin defendants, the defendants took loans to acquire and develop three lots in Sunrise Beach, Missouri, but they had difficulty finding buyers. *Community Bank of the Ozarks*, 984 F.2d at 256. Despite being given additional time to repay their debt, they defaulted, and the lending bank also failed. *Community Bank of the Ozarks*, 984 F.2d at 256. After the FDIC stepped in, the properties were sold by a successor bank, but the sale left a large deficiency owing, and in response to a claim for a deficiency judgment, the borrowers contended the lending bank made certain

promises in connection with the loan. *Community Bank of the Ozarks*, 984 F.2d at 256. These statements included promising to defer repayment for a reasonable time after construction while the developers found buyers, increasing the loan to fund additional stages of construction, and making reasonable efforts to finance buyers. *Community Bank of the Ozarks*, 984 F.2d at 256. The borrowers' only documentation of these assurances was a letter they sent stating their " 'understanding of the agreement,' " but this letter was not in the bank's files and thus met none of the statute's requirements, which were for the terms to be in writing, contemporaneously executed with the note by both parties, approved by the bank's loan committee, and an official part of the bank's records since their execution. *Community Bank of the Ozarks*, 984 F.2d at 257; 12 U.S.C. § 1823(e) (2012). In an attempt to get around *D'Oench*, those borrowers also contended that because some of the employees of the failed bank had gone to work for the successor bank, the new bank could not claim ignorance of the special terms. *Community Bank of the Ozarks*, 984 F.2d at 257. Unfortunately for those borrowers, however, it is a well-settled proposition that the FDIC's knowledge of an unrecorded agreement or representation does not affect the application of the statute. *Community Bank of the Ozarks*, 984 F.2d at 257. This case does not support the current borrowers' appeal.

¶ 36    The Boltin defendants also cite but do not attempt to apply *Howell*, which is a case in which the court rejected the FDIC's reliance on *D'Oench. Howell v. Continental Credit Corp.*, 655 F.2d 743 (7th Cir. 1981). As Northbrook Bank argues, the court's reasons for determining *D'Oench* was not controlling there do not exist here. The equipment lease that the FDIC was attempting to enforce had bilateral obligations which the original lender had breached. *Howell*, 655 F.2d 743. Thus, the lease itself was the basis for the defense. Here, like in *D'Oench*, there are facially valid notes which impose unilateral obligations on the borrowers to repay the bank.

¶ 37    For these reasons, we find that *D'Oench* barred the Boltin defendants' affirmative defense, regardless of whether it was pled in sufficient detail, and that the trial judge was correct in rejecting it.

¶ 38    The next issue is whether the trial judge erred in granting summary judgment on the lender's complaint for foreclosure. The Boltin defendants opposed the motion on grounds that it was supported by inadequate affidavits. Summary judgment is appropriate where the pleadings, depositions, admissions and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co.*, 227 Ill. 2d 102, 106, 879 N.E.2d 305, 308 (2007). "Summary judgment is a drastic remedy and should be allowed only when the right of the moving party is clear and free from doubt." *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 291, 730 N.E.2d 1119, 1127 (2000). An order granting summary judgment is reviewed *de novo. Kajima Construction*, 227 Ill. 2d at 106, 879 N.E.2d at 308. In addition, we review *de novo* a trial court's ruling regarding the sufficiency of an affidavit which supports a motion for summary judgment. *Jackson v. Graham*, 323 Ill. App. 3d 766, 773, 753 N.E.2d 525, 531 (2001) (reviewing *de novo* a motion to strike an affidavit attached to a motion for summary judgment).

¶ 39    The record indicates that the Boltin defendants filed an unverified third amended answer to Northbrook Bank's verified third amended complaint. Once a verified pleading is filed by one party, all subsequent pleadings must be verified, unless excused. 735 ILCS 5/2-605(a) (West 2010) ("If any pleading is so verified, every subsequent pleading must also be verified, unless

verification is excused by the court."). There is no indication that the trial court excused the Boltin defendants from verification, thus, their unverified answer is treated as a nullity and the well-pled facts in the verified complaint are deemed admitted. *Marren Builders, Inc. v. Lampert*, 307 Ill. App. 3d 937, 942, 719 N.E.2d 117, 122 (1999) ("the court must regard the unverified pleading as if it was never filed"); *Pinnacle Corp. v. Village of Lake in the Hills*, 258 Ill. App. 3d 205, 209, 630 N.E.2d 502, 506 (1994) ("When a subsequent pleading is not verified, it is as if the unverified pleading was never filed; it must be disregarded."); *Florsheim v. Travelers Indemnity Co. of Illinois*, 75 Ill. App. 3d 298, 309, 393 N.E.2d 1223, 1232 (1979) (the failure to file a verified answer where one is required constitutes a failure to plead and results in all well-pled facts being deemed admitted).

¶ 40    The factual allegations of nonpayment and default under the Division, Sedgwick, and Oldtown loan agreements, and the unconditional repayment guaranty by Boltin personally, were admitted and uncontroverted allegations. It was, therefore, appropriate for the court to proceed on the basis of Northbrook Bank's affidavits to enter judgments of foreclosure. *First Federal Savings & Loan Ass'n of Ottawa v. Chapman*, 116 Ill. App. 3d 950, 954-55, 452 N.E.2d 600, 604 (1983) (if the factual allegations of foreclosure are not controverted by an answer, then an affidavit attesting to the facts of the complaint is sufficient evidence on which to enter a foreclosure decree); 735 ILCS 5/15-1506(a)(2) (West 2010) (section of the mortgage foreclosure statute stating, "where all the allegations of fact in the complaint have been proved by verification of the complaint or affidavit, the court upon motion supported by an affidavit stating the amount which is due the mortgagee, shall enter a judgment of foreclosure as requested in the complaint").

¶ 41    In the trial court, and now on appeal, the Boltin defendants contend, however, that Northbrook Bank's affidavit and supplemental affidavit of proof regarding the amounts due and owing were defective because the affiant, Northbrook Bank vice president Kimberly Okoye, based her statements in part on data that was compiled by personnel of the now defunct Ravenswood Bank. They cite Illinois Supreme Court Rule 191(a) for the proposition that an affidavit in support of a motion for summary judgment must be based on personal knowledge. Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013). That rule states in relevant part:

> "Affidavits in support of and in opposition to a motion for summary judgment under section 2-1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto. If all of the facts to be shown are not within the personal knowledge of one person, two or more affidavits shall be used." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

¶ 42    The Boltin defendants contend that because Okoye had no personal knowledge of the accounting procedures used at Ravenswood Bank, she was not competent to testify in person or swear in the affidavits to the validity of the accounting data used in her damage calculations. They suggest that Northbrook Bank should have found a former employee of Ravenswood Bank to lay a proper foundation for admitting the historical information, and that, without this witness, it was improper for the trial court to enter summary judgment.

¶ 43    Northbrook Bank responds that Okoye's affidavits were comprehensive and addressed not only the history of the loans and defaults, but also Okoye's ability to authenticate the Ravenswood Bank records used in her calculations. Northbrook Bank points out that the borrowers did not try to depose Okoye or conduct other discovery in an effort to prepare a counteraffidavit or present other evidence in opposition to her factual affidavits which included her reasons for relying on the accuracy of her employer's records. The bank also argues that without a counteraffidavit or other evidentiary material, the facts in the affidavits stood uncontradicted. See *F.H. Paschen/S.N. Nielsen, Inc. v. Burnham Station, L.L.C.*, 372 Ill. App. 3d 89, 92-93, 865 N.E.2d 228, 232 (2007) ("courts must accept an affidavit as true if it is uncontradicted by counteraffidavits or other evidentiary materials"); *Kugler v. Southmark Realty Partners III*, 309 Ill. App. 3d 790, 795, 795, 723 N.E.2d 710, 714 (1999) (same). They also point out that the Boltin defendants fail to cite a single case involving the business records of a bank or indicating that an employee of a successor bank cannot rely on and authenticate the records of its predecessor and that there is case law to the contrary.

¶ 44    We agree with Northbrook Bank. The motion and supporting affidavits for summary judgment and the order of foreclosure and sale were so detailed that they span more than two full volumes of the appellate record. Okoye's first affidavit was factually detailed and was accompanied by documents which she relied on, such as the loan agreements and amendments, property tax payment records, and numerous printouts from the "loan accounting system" of Ravenswood Bank which detailed payment, interest, and late charge transactions that were posted to the borrowers' accounts. Her second affidavit, which is the one the Boltin defendants focus upon, addressed her personal knowledge about the loan file and why the accounting records were reliably accurate. Okoye swore:

> "1. This affidavit acts as a supplement to my affidavit of proof and is tendered for the purpose of addressing the new requirements of Illinois Supreme Court Rule 113. The Supreme Court order for this new Rule 113 was entered on February 28, 2013, after I executed my original affidavit of proof on January 23, 2013, and after [Northbrook Bank] filed its motion for summary judgment on February 15, 2013. The new Rule 113 goes into effect May 1, 2013, before the hearing on our motion for summary judgment on May 9, 2013.
>
> 2. As part of my job duties, first as a commercial loan officer at Northbrook Bank in 2010 and then as an assistant vice president in 2012, I have administered and overseen commercial loans in litigation. This generally includes loans which originally were made by Northbrook Bank's predecessor in interest, Ravenswood Bank, and specifically including the loans in foreclosure in this case.
>
> 3. In conjunction with my affidavit of proof, as an employee and agent of Plaintiff, I reviewed the loan file, all of the loan documents relating to the three loans and properties at issue in this case and referred to in my affidavit, and filed with the court along with the summary judgment motion. I also reviewed payment history records relating to the three loans and properties at issue in this case.
>
> 4. As part of my job duties, first as a commercial loan officer at Northbrook Bank in 2010 and then as an assistant vice president in 2012, I became familiar with Ravenswood Bank's then-regular business practices and procedures, including those related to bookkeeping and the associated accounting and computer systems that maintain borrowers' accounts and loan information, as described herein. As a

commercial loan officer and assistant vice president, I have also become familiar with RAVENSWOOD BANK's accounting software by reviewing it regularly in foreclosure cases involving loans made by RAVENSWOOD BANK and by communicating with former RAVENSWOOD BANK employees, including those in operations whom Northbrook Bank retained after it acquired RAVENSWOOD BANK's assets from the FDIC.

5. RAVENSWOOD BANK utilized an accounting software program called Fiserv. Fiserv is a type of accounting software commonly used by banks. It is commercially available and is recognized as a standard accounting program in the banking industry. The Fiserv accounting software records loan payments and maintains the loan payment histories for RAVENSWOOD BANK's loans, including the loans for 2120 Division LLC, 1353 Sedgwick LLC, and Oldtown Management LLC. Those Fiserv loan payment histories are attached to my affidavit of proof as **Exhibits 1**, **3**, and **5**.

6. The Fiserv software and loan accounting systems was used by RAVENSWOOD BANK in the regular course of business activity, and the records in the Fiserv system have not been altered by Northbrook Bank.

7. The information regarding the loan terms for 2120 Division LLC, 1353 Sedgwick LLC, and Oldtown Management LLC as set forth in each respective note and amendment thereto was entered into Ravenswood Bank's Fiserv system, at or near the time the loans were made and as part of its regular course of business activity, and those Fiserv records and payment histories are now kept and maintained in Northbrook Bank's regular course of business.

8. It was part of RAVENSWOOD BANK's regular business practice for its employees in the loan operations department to input into the Fiserv system the loan payment histories' information regarding payments, credit, or advances, at or near the time payments were made or credits applied.

9. To the best of my knowledge, this practice was followed by maintaining the loans and inputting payment data in the Fiserv system with 2120 Division LLC, 1353 Sedgwick LLC, and Oldtown Management LLC. I have printed a true and accurate copy of each separate loan payment history from the Fiserv system. Each printed payment history is attached as **Exhibits 1**, **3**, and **5** to the Affidavit of Proof.

10. The loan payment histories are summations of documents and payment data relating to the loan, its payments, and associated charges, and loan payment histories were kept and maintained in the regular course of business activity for RAVENSWOOD BANK. Northbrook Bank now keeps and maintains the Fiserv records in the regular course of its business activity."

¶ 45    The Boltin defendants contend that Okoye has referenced her conversations with former employees of Ravenswood Bank, which is inadmissible hearsay, and that Okoye's lack of personal knowledge is most clearly demonstrated in paragraph 9 of her affidavit, by the statement that "[t]o the best of my knowledge, [Ravenswood Bank followed the stated record keeping procedures when dealing with the Boltin loans]." This contention is unpersuasive.

¶ 46    Okoye does not repeat her conversations or offer them for the truth of their contents, but rather is explaining the background or basis for her belief that the Ravenswood Bank records were made in the regular course of its business activities. Thus, her statement was not hearsay

and it properly helped lay the foundation for the admissibility of the bank's computer-generated payment histories. Hearsay is a statement which (1) the declarant does not make while testifying at the current trial or hearing and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). The hearsay rule bans in-court repetition of extrajudicial utterances only when they are offered to prove the truth or falsity of their contents and does not apply to statements offered merely to show that they were made. *United States v. Thurman*, 915 F. Supp. 2d 836, 862 (W.D. Ky. 2013). Furthermore, it would have been permissible for Okoye to repeat specific conversations instead of just indicating that she had those conversations. If an out-of-court statement is offered only to establish the recipient's belief or state of mind as a result of the utterance, then the extrajudicial statement is not hearsay. *Thurman*, 915 F. Supp. 2d at 862 (citing the federal counterpart to our state rule). Also, rather than reading paragraph 9 in isolation or just the sentence clause "[t]o the best of my knowledge," as the Boltin defendants have done, we take the document as a whole (*F.H. Paschen/S.N. Nielsen*, 372 Ill. App. 3d at 92, 865 N.E.2d at 32) and conclude that the affidavit describes Okoye's ability to competently testify about its contents. In the affidavit, Okoye indicates that the Fiserv software is a standard accounting software in the banking industry and that she became familiar with it as she began regularly reviewing accounting records in conjunction with foreclosure actions on Ravenswood Bank notes and communicating with her coworkers who were former employees of Ravenswood Bank. Okoye further explains that she learned it was a regular business practice of the loan operations personnel of Ravenswood Bank to contemporaneously update its Fiserv records with payments, credits, or advances. With this background in place, Okoye then states, "To the best of my knowledge, this [record keeping] practice was followed in maintaining the loans and inputting payment data in the Fiserv system [with the loans at issue]." We find that the affidavit satisfies Rule 191, because, as a whole, the affidavit indicates personal knowledge and allows the reader to reasonably infer that Okoye could competently testify to its contents at trial. *F.H. Paschen/S.N. Nielsen*, 372 Ill. App. 3d at 92, 865 N.E.2d at 32; *Kugler v. Southmark Realty Partners III*, 309 Ill. App. 3d 790, 795, 723 N.E.2d 710, 714 (1999). Furthermore, because the affidavit was unopposed, we take it as true. *F.H. Paschen/S.N. Nielsen*, 372 Ill. App. 3d at 92-93, 865 N.E.2d at 869; *Kugler*, 309 Ill. App. 3d at 795, 723 N.E.2d at 714.

¶ 47 This conclusion is bolstered by two cases cited by Northbrook Bank which reject the proposition that affidavits such as Okoye's were inadmissible proof in this foreclosure case. The first foreclosure case is *Land*, in which the trial judge granted a bank's motion for summary judgment which was supported by an affidavit completed by the bank's assistant vice president. *Bank of America, N.A. v. Land*, 2013 IL App (5th) 120283, ¶ 5, 992 N.E.2d 1266. The affidavit included a record of all payments and stated a total amount in default. *Land*, 2013 IL App (5th) 120283, ¶ 5, 992 N.E.2d 1266. The borrowers argued that the assistant vice president could not competently testify to records kept by another company which preceded the bank's acquisition of the loan. *Land*, 2013 IL App (5th) 120283, ¶ 11, 992 N.E.2d 1266. They also argued the records did not take into account a series of $490 payments which had been made pursuant to a loan modification agreement. *Land*, 2013 IL App (5th) 120283, ¶ 15, 992 N.E.2d 1266. They did not, however, support this argument with a counteraffidavit disputing the balance owed. *Land*, 2013 IL App (5th) 120283, ¶ 17, 992 N.E.2d 1266. The court relied on authority indicating it made no difference if the business records were those of the bank or a third party, so long as the person authenticating the records was their custodian or

other person familiar with the business and its mode of operations. *Land*, 2013 IL App (5th) 120283, ¶ 13, 992 N.E.2d 1266. The court found that the assistant vice president's affidavit sufficiently laid a foundation for the admission of the bank's accounting records (*Land*, 2013 IL App (5th) 120283, ¶ 13, 992 N.E.2d 1266) and that the trial court rightfully relied on the bank's unopposed calculations (*Land*, 2013 IL App (5th) 120283, ¶ 14, 992 N.E.2d 1266).

¶ 48 The second case we find helpful is *Avdic*, where the borrower failed to supply a counteraffidavit (*US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 7, 10 N.E.3d 339) but challenged the sufficiency of a bank employee's affidavit. The bank employee had, however, factually described her review of the business records and loan file and attached the mortgage, note, and computerized payment records which were the basis for her sworn conclusion of the total amount in default (*Avdic*, 2014 IL App (1st) 121759, ¶ 30, 10 N.E.3d 399). The court found that the statement factually attesting to the bank employee's personal knowledge of the bank's contract, record-keeping practices, and computer-generated records, established a foundation for admission of the bank's records, which included specific figures for principal, interest, late charges, and other expenses such as taxes and insurance. *Avdic*, 2014 IL App (1st) 121759, ¶¶ 26-29, 10 N.E.3d 399. The court rejected the borrowers' contention that the bank employee needed to have personally made the entries in the record-keeping software or been familiar with the file before the dispute arose. *Avdic*, 2014 IL App (1st) 121759, ¶ 29, 10 N.E.3d 399.

¶ 49 For these reasons, we are unpersuaded by the Boltin defendants' contention that Okoye's affidavit in support of Northbrook Bank's motion for summary judgment was insufficient because it was not prepared by an employee of the predecessor bank. Accordingly, we affirm the trial court order granting summary judgment.

¶ 50 Finally, we return to the lender's request to dismiss as moot any part of the borrowers' appeal which would affect the rights of the third part*y bona fide* purchasers of the properties. Given that the appeal has been unsuccessful and does not disturb any of the trial court's rulings, the lender's request is moot and is stricken as such.

¶ 51 Summarizing, the lender's motion to limit the scope of the appeal is denied, the lender's motion to dismiss the appeal in part as moot is stricken, and the trial court's judgment order in favor of the lender and against the borrowers is affirmed.

¶ 52 Affirmed.