NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250461-U

NO. 4-25-0461

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 23, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| CHARLES N. ERICKSON, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| LARRY McDOWELL, | ) | No. 24SC1736 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Donald W. Knapp Jr., |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Steigmann and Lannerd concurred in the judgment.

**ORDER**

¶ 1   *Held*:   At the bench trial in this breach-of-contract case, (1) there was sufficient evidence of an oral contract between the attorney and the client for the attorney's performance of probate work, and (2) the award of compensation to plaintiff for his services was not against the manifest weight of the evidence, except that half an hour of preparation time lacked a basis in the evidence.

¶ 2   Plaintiff, Charles N. Erickson, an attorney, sued defendant, Larry McDowell, in the McLean County circuit court for breach of contract. After a bench trial, the court awarded plaintiff $886. Defendant appeals on essentially four grounds.

¶ 3   First, defendant contends that there was no evidence that plaintiff sent him an invoice. We disagree. Plaintiff introduced, as plaintiff's exhibit A, an invoice addressed to defendant at his e-mail address. In any event, defendant fails to explain why, from a legal standpoint, it matters whether plaintiff previously sent him the invoice, especially given that, at trial, defendant disputed the existence of a contract between himself and plaintiff and given that

he still disputes the existence of a contract. Second, defendant complains that the circuit court declined to admit into evidence 19 documents that he wished to present in support of his affirmative defenses. He does not explain, however, what these affirmative defenses were—and, generally, his brief contains little in the way of reasoned legal argument.

¶ 4 Third, defendant argues the circuit court erred by compensating plaintiff for preparation time that had no basis in the evidence. We agree with this argument. Accordingly, we modify the judgment from $886 to $704, disallowing $170 of the monetary judgment, which represents half an hour of charges at plaintiff's hourly rate of $340 per hour.

¶ 5 Fourth, defendant maintains that plaintiff failed to prove the existence of an oral contract. We disagree. According to his testimony, plaintiff informed defendant that his hourly rate for probate work was $340, and after plaintiff so informed him, defendant directed plaintiff to begin the probate process and left the decedent's original will with him. The circuit court had the right to believe that testimony. Defendant does not explain why that testimony, if believed, was insufficient to prove an oral contract between himself and plaintiff.

¶ 6 Therefore, we modify the judgment to $704 and affirm the judgment as modified.

¶ 7                                    I. BACKGROUND

¶ 8 According to the bystander's report (see Ill. S. Ct. R. 323(c) (eff. July 1, 2017)), plaintiff testified in substance as follows. On September 5, 2024, he received a telephone call from defendant requesting assistance in a probate matter. Although plaintiff had a policy of allowing a free 10-minute consultation, this telephone call lasted 12 minutes. In their telephone conversation, plaintiff informed defendant that his rate was $340 per hour. On September 23, 2024, plaintiff and defendant met in person and discussed the probate matter. At the end of the meeting, defendant told plaintiff to go ahead and start the probate process, and defendant left the

decedent's original will with plaintiff, who in turn filed it with the circuit clerk.

¶ 9 During his testimony, plaintiff presented, as plaintiff's exhibit A, an invoice addressed from him to defendant's e-mail address. The total amount charged in the invoice was $886 for the following services:

| "Quantity | Description |
|---|---|
| 0.2 | 9/5/24—Phone conference to discuss Estate |
| 1 | 9/23/24—Office conference with [defendant] re: Probate |
| 1 | 9/23/24—Start work on probate documents |
| 0.2 | 9/26/24—Arrange for filing of Wills [*sic*] |
| 0.2 | 9/27/24—Write email to [defendant] re: Attached wills [*sic*]." |

¶ 10 Defendant also testified that, at 4:31 p.m. on September 24, 2024, after the meeting at plaintiff's office, he telephoned plaintiff and told him he had decided to hire a different attorney and that he would stop by to pick up the will. According to defendant's testimony, plaintiff refused to return the will until defendant paid plaintiff for the work plaintiff had done thus far.

¶ 11 Plaintiff, on the other hand, disputed that he had held the will hostage in an attempt to get payment. He explained that, instead, his reason for declining to give the will back to defendant was that, under section 6-1(a) of the Probate Act of 1975 (755 ILCS 5/6-1(a) (West 2024)), plaintiff had a duty to file the will with the circuit clerk after coming into possession of it.

¶ 12 There was an additional factual dispute at trial. Defendant disputed that his meeting with plaintiff on September 23, 2024, lasted an hour as stated in the invoice. He testified that, instead, after beginning late at 11:15 a.m., the meeting lasted no more than half an hour. For

proof, defendant offered documentary evidence that he had a chiropractor's appointment immediately after his meeting with plaintiff and that he left the chiropractor's office, across the parking lot from plaintiff's office (and that the chiropractor, therefore, was done treating him) at 12:09 p.m. on September 23, 2024. Declining to admit into evidence this documentation, the circuit court requested defendant to simply explain what the documentation proved, and defendant did so.

¶ 13        The circuit court entered judgment in plaintiff's favor. It found plaintiff "would have had" preparation time before the meeting on September 23, 2024. Therefore, the court declined to reduce the one-hour charge for the meeting.

¶ 14        This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16                         A. Whether the Invoices Were Sent

¶ 17        Defendant argues, "Plaintiff alleged that Defendant failed to pay for services rendered, yet failed to submit even a single invoice into evidence during the hearing, nor did he testify that such invoices were provided to Defendant."

¶ 18        The bystander's report and plaintiff's exhibit A, which is attached to the bystander's report, appear to belie defendant's assertion that plaintiff "failed to submit even a single invoice into evidence." According to the bystander's report, plaintiff "opened his comments [at trial] by presenting 10 exhibits," including plaintiff's exhibit No. A, an "Invoice dated 10-2-24 in the amount of $886.00." Thus, it appears that, contrary to defendant's representation to us, plaintiff submitted an invoice into evidence: plaintiff's exhibit A.

¶ 19        Defendant further represents, "[N]or did [Plaintiff] testify that such invoices were provided to Defendant." It could be reasonably inferred from the face of plaintiff's exhibit A that

at least *that* invoice, for $886, was provided to defendant. In the "Bill To" box of the invoice are defendant's name and his e-mail address, which defendant confirms in his brief is his "correct email address." Generally, when an invoice is generated, it is sent, or else it would have been pointless to generate the invoice. Plaintiff's exhibit A could be regarded as evidence that, on October 2, 2024, defendant was invoiced at his e-mail address.

¶ 20　　　　Let us assume, however, for the sake of argument, that plaintiff failed to prove he e-mailed the invoice to defendant on October 2, 2024. It is unclear why, legally, it matters, given that defendant disputed, and still disputes, that he even had a contract with plaintiff.

¶ 21　　　　Besides, defendant received the invoice, at the latest, at trial. According to the bystander's report, plaintiff "testified to each and every item on his bill contained in Exhibit A." From a legal point of view, then, why would it matter if defendant had not received the invoice sooner? It is unclear what his legal reasoning is in that respect. Because defendant fails to make a reasoned argument accompanied by citation to relevant authorities, his contention of error in the alleged failure of plaintiff to testify that he provided the invoice to defendant is forfeited. See *Zdeb v. Allstate Insurance Co.*, 404 Ill. App. 3d 113, 121 (2010).

¶ 22　　　　B. Refusal to Admit Documentary Evidence in Support of Affirmative Defenses

¶ 23　　　　Defendant complains that, "[a]t trial, [he] attempted to introduce 19 exhibits in his defense, including emails, notes, phone logs, and calendar entries corroborating his affirmative defenses" and the circuit court "refused to review or admit any of these materials, nor did it permit Defendant to testify to their contents."

¶ 24　　　　The bystander's report appears to contradict defendant's representation that the circuit court refused to "permit Defendant to testify to [the] contents" of the 19 exhibits. According to the bystander's report, when defendant told the court he "had 19 exhibits to submit

into evidence," the court "asked the Defendant to give a verbal overview of the documents before submitting them," and defendant did so. After defendant's verbal overview, the court "ruled that [it] did not need to see any physical evidence with the supporting details." It is unclear how defendant suffered any prejudice from the court's refusal to admit into evidence the 19 documents, considering that the court allowed defendant to present those documents via his testimonial description of them. See *Elder v. Finney*, 256 Ill. App. 3d 424, 428 (1993) ("[A]ny minimal prejudice [the defendant] may have suffered was cured by the trial court's allowing him to testify before the jury as to the tapes existence and their contents.").

¶ 25 It also is unclear, from the argument in defendant's brief, what his affirmative defenses were and how they qualified as true affirmative defenses. To establish that the circuit court erred by refusing to admit documentary evidence in support of an affirmative defense, defendant would have to explain, first, what the defense was and how it was a valid affirmative defense to plaintiff's action for breach of contract. See *Northbrook Bank & Trust Co. v. 2120 Division LLC*, 2015 IL App (1st) 133426, ¶ 14 ("An affirmative defense is comprised of allegations that do not negate the essential elements of the plaintiff's cause of action, but rather admit the legal sufficiency of the cause of action, and assert new matter by which the plaintiff's apparent right of recovery is defeated."). Then defendant would have to explain how the documentary evidence was relevant to the affirmative defense. Absent such explanations, we find that this issue is forfeited for lack of a reasoned argument supported by citation to relevant authorities. See *Zdeb*, 404 Ill. App. 3d at 121.

¶ 26 C. The Duration of the Initial Meeting

¶ 27 Defendant contends that the circuit court erred by "disregarding" his testimony that his initial meeting with plaintiff, on September 23, 2024, was shorter than the one hour for

which plaintiff billed him in plaintiff's exhibit A. According to the bystander's report, defendant testified as follows at trial:

> "The initial consultation meeting was approximately 30 minutes.
>
> The meeting started at 11:15am and we were done approximately at 11:45.
>
> I have a record that I checked out of my Chiropractor appointment at 12:09 on 9/23/24.
>
> So it's fair and reasonable to believe from 11:45 to 12:09 I had a few minutes conversation with Mindy after the meeting, a few minutes to get to the Chiropractor office just across the parking lot, and an approximately 20 minute Doctor appointment. Thereby confirming the consultation meeting was approximately 30 minutes long."

¶ 28 In response, in his brief, plaintiff argues that, "[o]n September 23, 2024, [plaintiff and defendant] met in person for approximately one hour and ten minutes." (Presumably, the extra 10 minutes was the free consultation.) At the page that plaintiff cites, the bystander's report reads that plaintiff "testified to each and every item on his bill contained in Exhibit A." The bystander's report does not appear to specify, however, what plaintiff said in his testimony regarding the one-hour item dated September 23, 2024, and described as "Office conference with [defendant] re: Probate."

¶ 29 Judging from the bystander's report, the circuit court did not disbelieve defendant's testimony that the initial consultation meeting, on September 23, 2024, began at 11:15 a.m. and ended at approximately 11:45 a.m. Instead, the bystander's report reads as follows:

"The Judge understands the Defendant had concerns with the invoice amount because of the 10 min[ute]s of free consultation and the evidence of the meeting concluding early to attend the chiropractor appointment but ruled the invoice of 10-2-24 for $886, Exhibit A, was fair and reasonable because the Plaintiff would have had prep time for the initial meeting."

The factual dispute between plaintiff and defendant was whether plaintiff spent a full hour at the meeting (plaintiff's version) or only 30 minutes (defendant's version). Instead of choosing one version over the other, the court took a middle course by finding that plaintiff "would have had prep time"—presumably, 30 minutes—"for the initial meeting." Defendant argues that the court's finding that plaintiff "would have had prep time" was speculative, lacking any basis in the evidence.

¶ 30        "Factual determinations of a trial court are reviewed under the manifest weight of the evidence standard and will be reversed only where the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based in evidence." (Internal quotation marks omitted.) *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 17. The finding of 30 minutes of "prep time" for the September 23, 2024, meeting is not based on the evidence. Plaintiff never testified he spent half an hour preparing for his initial meeting with defendant. Nor does plaintiff's exhibit A contain any mention of such preparation time. The unproven half-hour of preparation time should have been disallowed, and defendant should have been charged one and a half hours for September 23, 2024, instead of two hours.

¶ 31                    D. The Existence of an Oral Contract

¶ 32        According to defendant, the circuit court's finding that he breached an oral contract with plaintiff was unproven because "[t]here was no mutual understanding as to pricing,

no agreed hourly rate, and no confirmation from Plaintiff at any time that Defendant accepted specific payment terms." The bystander's report, however, contains evidence of a mutual understanding. Plaintiff testified that, in their 12-minute telephone conversation on September 5, 2024, he told defendant that his "hourly rate was $340 per hour." Plaintiff further testified that, at the meeting on September 23, 2024, after plaintiff informed defendant of the hourly rate in their previous telephone conversation, defendant "told me to go ahead and start probate process and left with me the decedent's original will." "In a bench trial, credibility determinations, the resolution of inconsistencies and conflicts in testimony, and the weight to be given to evidence lie exclusively within the province of the trial judge," and "[w]here the trial court heard the testimony of witnesses and resolved the inconsistencies in favor of one party, that finding is entitled to deference." *Arora v. Junejo*, 2024 IL App (3d) 230427-U, ¶ 62. If plaintiff's testimony were believed, plaintiff offered to do probate work for defendant at the rate of $340 an hour, and defendant accepted the offer by telling plaintiff to begin the probate process and by leaving the original will with plaintiff. Defendant does not explain why that testimony, if believed, would be insufficient to prove the creation of an oral contract with definite terms.

¶ 33                                    III. CONCLUSION

¶ 34          For the reasons stated, we modify the circuit court's judgment to a judgment in the amount of $704 against defendant and in plaintiff's favor, and we affirm the judgment as modified.

¶ 35          Affirmed as modified.